DR. J. VICTOR HENDERSON *v.* CITY OF KNOXVILLE *et al.*[*]

*(Knoxville.* September Term, 1928.)

Opinion filed October 13, 1928.

1. PHYSICIANS AND SURGEONS.  ETHICS.  UNPROFESSION-
   AL CONDUCT.  REMEDY LEGISLATIVE NOT JUDICIAL.

Where a hospital staff have different ideas of what constitutes un-
professional conduct in the medical profession from that pre-
scribed by the Legislature, the remedy for the correction of such
an evil, if one exists, is legislative and not judicial.  It is the
prerogative of the law-making body to adopt codes of ethics and
rules of conduct for the medical profession.  (Post, p. 481.)

2. PHYSICIANS AND SURGEONS.  ETHICS.  UNPROFESSION-
   AL CONDUCT.

The Legislature has enacted laws for the licensing of physicians,
prescribed rules of conduct for their guidance after they are
licensed, and has made it unlawful to divide or to agree to divide
fees with any person without the knowledge and consent of the
person paying the fee.  By soliciting practice from and in fact
dividing fees with other physicians, does not come within the
prohibition of these statutes.  Violation of these laws by a phy-
sician is not covered by a charge of soliciting practice from
physicians and offering to divide his fees with them.  (Post, p.
481.)

3. PHYSICIANS AND SURGEONS.  ETHICS.  UNPROFES-
   SIONAL CONDUCT.

A physician who stays within the law, as prescribed by the statute,
has a right to practice his profession in the public hospitals of the
State, and neither the city nor the hospital authorities can pre-

scribe rules or regulations that contravene or conflict with the State laws. (Post, p. 483.)

4. PHYSICIANS AND SURGEONS. PRIVATE HOSPITALS. VOLUNTARY MEDICAL SOCIETIES. RULES AND REGULATIONS.

A private hospital can prescribe rules and regulations for the violation of which a physician or surgeon may be excluded from practicing therein and voluntary medical societies and associations can discipline a member who violates their rules of conduct in such manner as they see fit. (Post, p. 483.)

5. ATTORNEYS AT LAW. PHYSICIANS. RULES OF CONDUCT.

Just as the Legislature has prescribed rules of conduct for the legal profession, the violation of which subjects the offender to suspension or disbarment, so that as long as he stays within the law, he has a right to practice in the courts of the State; but no judge could refuse to allow him to practice in his court because he considers the lawyer guilty of unethical practice which is made so by statute, so a hospital may not disbar a physician from practicing therein so long as he stays within the law, although the hospital authorities may consider him guilty of unethical practice. (Post, p. 483.)

6. PHYSICIANS AND SURGEONS. PUBLIC HOSPITALS.

The manager of·a hospital cannot refuse a physician admittance or expel him because the physician's professional conduct did not comport with his own conception. This would be dangerous. A physician might be in one day and out to-morrow, depending upon the whim and caprice of the hospital management. (Post, p. 484.)

---

*Corpus Juris-Cyc References: Hospitals, 30 C. J., section 7, p. 463, n. 32.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.—
HON. R. M. JONES, Judge.

SMITH & CARLOCK, for complainant, appellant.

FRANK MONTGOMERY, W. H. PETERS, JR. and J. ALVIN
JOHNSON, for defendants, appellee.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

The bill in this cause was filed by Dr. Henderson
against the City of Knoxville and Frank Bane, Director
of Public Welfare of said City, for the purpose of re-
straining them from interfering with him in the practice
of his profession in the Knoxville General Hospital.

Dr. Henderson is a regularly licensed physician and
surgeon, and has enjoyed a large practice in Knoxville
for some years.

The Knoxville General Hospital is owned and oper-
ated by the City, and all licensed and reputable physi-
cians and surgeons of the City of Knoxville and Knox
County are permitted to treat and operate upon patients
in said hospital.

Under the present charter of the City of Knoxville the
hospital is under the management and control of the
Director of Public Welfare.

The physicians and surgeons practicing in said hos-
pital are classified in two groups, viz.: the Executive
Group and the Clinical Group, and together they are
called the Medical Staff of the hospital. The members of
the Executive Group are appointed by the Director of
Public Welfare to serve one year, and treat the charity

patients in said hospital. All other physicians, who treat patients in said hospital, are classed in the Clinical Group.

On April 21, 1926, written charges, signed by seventeen members of the Staff, were preferred against Dr. Henderson as follows:

"We, the undersigned members of the Staff of the Knoxville General Hospital, have been reliably informed that a member of this staff has been guilty, and is guilty, of grossly unethical and unprofessional conduct. It has been currently reported, and generally believed that Dr. J. Victor Henderson has been, and is still, soliciting practice from physicians throughout this section of the country; and, in various and sundry instances, has offered as an inducement to such men to refer him their surgical cases, to divide his fees with them, to take care of them, etc."

Dr. Henderson was charged, as will be noted, with soliciting practice from physicians and offering to divide his fees with them. He was not charged with directly soliciting patients, neither was it charged that he had, in fact, divided fees with any physician.

Dr. Henderson was tried before the Staff and found guilty by a vote of twenty-nine to five. Thereupon Bane reviewed the action of the Staff, approved same, and notified Dr. Henderson that he would not be further permitted to practice in the hospital, except that he could continue waiting on the patients which he already had there. A little later Dr. Henderson attempted to take another patient to the hospital for treatment, but he was forbidden to enter the hospital.

The charges preferred were abundantly sustained, but Dr. Henderson, without contradiction, testified that he

never solicited patients directly and never divided fees with the physicians who brought a patient to him without the consent of the patient.

The chancellor dismissed the bill upon the theory that the Director of Public Welfare was acting within his authority in declining to permit Dr. Henderson to further practice in the hospital.

It is not claimed that the Director of Public Welfare had any such express authority, but that one of the implied powers of his office was to say who should and who should not practice in the hospital.

The record is a voluminous one, and counsel have favored us with nearly two hundred pages of typewritten briefs, so that within a reasonable space we will be unable to detail all of the matters developed in the cause, or to discuss the numerous authorities cited.

(1)   It would seem that the Legislature of the State and the Staff of the Knoxville General Hospital have different ideas as to what constitutes unprofessional conduct in the medical profession, and the application for the discipling of Dr. Henderson, and those who entertain his views, should be made to the Legislature rather than to the courts.   The medical staff of some other public hospital in Tennessee might importune us to adopt a different code of ethics, and, in prescribing rules of conduct for this honorable profession, we would be in the attitude of usurping the prerogatives of the law-making body instead of interpreting and declaring what the law is.

(2)   We are familiar with no statute or ordinance which provides that what Dr. Henderson is charged with shall debar him from practice in the public hospitals of the

157 Tenn.—31.

State. Able counsel representing the City have referred us to no such law, nor cited any authorities that directly support their contention in this cause.

The State has passed laws for the licensing of physicians and has prescribed rules of conduct for their guidance after they have been licensed. They are as follows:

"The words, unprofessional or dishonorable conduct, as used in the preceding section, are hereby declared to mean:

"First—By procuring or aiding or abetting in procuring a criminal abortion.

"Second—The obtaining of any fees on the assurance that a manifestly incurable disease can be permanently cured.

"Third—The willfully betraying of a professional secret.

"Fourth—All advertising or medical business in which untruthful and improbable statements are made.

"Fifth—All advertising of medicine or means whereby the monthly periods of women can be regulated or menses re-established if suppressed.

"Sixth—Conviction of any offense involving moral turpitude.

"Seventh—Habitual intemperance or excessive use of narcotic.

"Eighth—The practice of making or signing in his professional capacity of any certificate that is known to be false by the licensed physician at the time that he makes or signs such certificate." Shannon's Annotated Code, vol. 3, sec. 3609a30.

"It shall be unlawful for any licensed physician or surgeon in the State of Tennessee to divide, or to agree to divide, any fees, or compensation of any sort whatever,

received or charged by him in the practice of medicine or surgery, with any person whomsoever, without the knowledge and consent of the person, firm, or corporation paying such fee, or compensation, or against whom the same may be charged, and any person violating this section shall be deemed guilty of a misdemeanor.'' Chapter 110, Acts of 1917.

*(3)* The defendant was not charged with violating either of these statutes, and so long as he stays within the law he has a right to practice in the public hospitals of the State; provided, of course, that he conforms to all reasonable rules and regulations of the institutions. But neither the City nor the hospital authorities can prescribe rules or regulations that contravene or conflict with the State laws.

*(4)* It is otherwise when it comes to private hospitals; and voluntary medical societies and associations can discipline a member who violates their rules of conduct in such manner as they see fit.

*(5)* In the legal profession the Legislature has likewise prescribed rules of conduct, a violation of which subjects the offender to suspension or disbarment, but so long as the lawyer stays within the law he has a right to practice in the courts of the State.

For many years it was unlawful for an attorney to prosecute a case upon a contingent fee, but this is no longer true, although many members of the profession consider it unethical. But it could hardly be contended that a judge of a local court, who considered such practice unethical, could debar a lawyer from practicing in his court because he prosecuted cases on contingent fees.

If the medical profession feels that the good of the order demands more stringent regulations then the remedy is legislative and not judicial.

(6) To empower a manager of a hospital to refuse a physician admittance or to expel him, if his conception of professional conduct did not comport with his own, would be a dangerous thing. A physician might be in today and out tomorrow, depending upon the whim and caprice of the particular individual who happened to be manager.

For the reasons stated herein, we feel constrained to reverse the decree of the chancellor, and grant the complainant the relief prayed for in his bill.

This cause was transferred to this court from the Court of Appeals for the reason that a constitutional question was raised, which we have found it unnecessary to discuss in this opinion.

The costs will be taxed against the City of Knoxville.