Benjamin Brenner, J.
Plaintiff, an accountant, long in the civilian employ of the United States Air Force, was discharged therefrom following receipt of a letter addressed to it by his doctor, the defendant, which established that plaintiff’s absences were due to alcoholism. The doctor had alerted plaintiff that the letter was requested by the Air Force because the underlying cause of plaintiff’s illness had not been set out in prior medical certificates issued by him in behalf of the plaintiff to explain such absences. The formal notice of discharge listed plaintiff’s repeated absences, recited the doctor’s letter *792 and rejected plaintiff’s attempt to attribute the absences to a series of misfortunes. It is plaintiff’s contention that he requested the doctor not to send the letter, that his discharge was due directly to it and that he could not find permanent employment thereafter.
On trial plaintiff urged three theories of action: (1) that in mailing the letter the doctor committed an unlawful act which constituted malpractice for the reason that it divulged a confidential communication; (2) that even if the mailing of the letter were lawful it is actionable for prima facie tort in that it was deliberately sent against plaintiff’s specific plea that it be withheld, and (3) that the contents of the letter were untrue and thus gave rise to an action in negligence.
A doctor is indeed a confidante of medical information and knowledge that come to him while treating his patient. Dr. G-eraci learned that plaintiff had taken to drink as a means of meeting his social problems. He repeatedly treated him for asthmatic bronchitis and respiratory infections which were the ill effects thereof. His disclosure of that information is defined as unprofessional conduct by section 30 of article 2 of the Regulations of the Commissioner of Education, made pursuant to the Education Law:
‘ ‘ 4. ‘ Unprofessional conduct [in the practice of medicine ’ shall include but not be] limited to the following:
^ ^ ^
“ (c). The revealing of facts, data, or information obtained in a professional capacity relating to a patient or his records without first obtaining consent of the patient or his duly authorized representative, except if duly required by a court of competent jurisdiction ”. (N. Y. Off. Comp, of Codes, Rules & Regulations [13th Suppl.], p. 407.)
He is, by another statute, specifically enjoined from giving-evidence of such information when called upon to testify as a witness (Civ. Prac. Act, § 352). So, while no principle of common law is violated (Wigmore, Evidence [3d ed.], § 2380), disclosure is plainly reprehensible as indicated by the statutory law in this State, accepted usage and the Hippocratic oath, for information possessed by the doctor of the illness of his patient has long been thought of as a protected professional confidence upon which every patient may rely.
Yet I have been unable to discover, nor have the parties brought to my attention, any New York case dealing with the subject, apart from the giving of testimony in an action at law. Other jurisdictions have recognized that a disclosure may be *793 actionable. (Berry v. Moench, 8 Utah 2d 191; Simonsen v. Swenson, 104 Neb. 224; Smith v. Driscoll, 94 Wash. 441.) I believe that the cause should also be recognized in this State because the duty of secrecy is implied by our statutory law and widely conceived in the doctor-patient relationship.
It is, however, the doctor’s claim that he had an overriding-duty to make a disclosure of the underlying cause of plaintiff’s illnesses and absences when required by a military unit of the United States Government so to do, especially since he had previously supplied incomplete information. The delicate balance of conflicting- duties must thus be weighed (Berry v. Moench, supra; Simonsen v. Swenson, supra) to determine the doctor’s paramount duty. Was the duty to divulge the employee’s weakness, which conceivably could be used to rid the Government of a worthless servant and thereby save public funds, greater than the duty to maintain a confidential professional communication ?
Had the disclosure risen to the level of a need to safeguard the security of the Government or the safety of the public, as in a case of a disclosure of a communicable disease (Simonsen v. Swenson, supra), it would, of course, be quite simple to find that the doctor’s duty to disclose overrode his duty to remain silent. In view of the prior incomplete medical certificates requested by the plaintiff and supplied by the doctor to explain the former’s absences, it may similarly be said that his right, if not duty to his Government, to make a full disclosure of the facts superseded his duty to the patient to remain silent.
This leads directly to the issue of waiver. The prior requested medical certificates not only set forth the fact of illness but described plaintiff’s trouble to have consisted of ailments without disclosure that many of them, such as the bronchial and respiratory difficulties, - were due to alcoholism. These requested certificates constituted plaintiff’s waiver of the privilege at least as to those illnesses which were described. The question is, assuming it to be true that plaintiff had specifically requested the doctor not to dispatch the letter, whether, having previously asked for and permitted incomplete disclosures as to the nature of his illness, such waiver of privilege could be limited or terminated. If section 352 of the Civil Practice Act were directly applicable and the privilege even partially waived as to testimony upon trial, we know that such waiver would be complete and not thereafter subject to termination, restriction or qualification. (Apter v. Home Life Ins. Co., 266 N. Y. 333.) The plaintiff knew that the nature of his illness *794 had been set out in the certificates requested by him but he insists that the underlying cause thereof, namely alcoholism, could not legally be disclosed. He not only waived the dis-1 closure of the secret to the extent that they told of the effects of his habitual inebriation, but was aware that the certificates were true only as far as they went. Having placed the doctor in the position of telling but part of the truth, he is estopped from preventing his divulging the remainder. In the circumstances there could be no qualification, limitation or termination of the waiver.
The second theory of action is that regardless of the lawful character of the disclosure, the same constituted a prima facie tort because it was deliberately and willfully made with knowledge that it would bring about plaintiff’s discharge.
Prima facie tort arose out of the dictum enunciated in Mogul 8. 8. Co. v. McGregor (23 Q. B. D. 598, 613, affd. [1892] A. C. 25) that “intentionally to do that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another in that other person’s property or trade, is actionable if done without just cause or excuse.” The doctrine was espoused by Mr. Justice Holmes who said “ prima f acie, the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape.” (Aikens v. Wisconsin, 195 U. S. 194.) The theory of prima facie tort was accepted in New York (Beardsley v. Kilmer, 236 N. Y. 80) if the sole motivation for the acts complained of were the intent to harm the plaintiff. And in Al Raschid v. News Syndicate Co. (265 N. Y. 1, 4) the court said: “ Even a lawful act done solely out of malice and illwill to injure another may be actionable.” Intent to harm and not merely intent to do the act (Rusa v. Rusa, 286 App. Div. 767) seems to be one of the necessary ingredients of prima facie tort. And if there be justification" the action does not lie. In Beardsley v. Kilmer (supra) the malicious character of the act was required to be unmixed and exclusive to render a lawful act unlawful. So in Reinforce, Inc., v, Birney (308 N. Y. 164) it was said that even if the motivation be mixed there may be sufficient justification though there is some intent to do harm.
The court must weigh the conflicting interests of the public and the private parties (Brandt v. Winchell, 3 N Y 2d 628) to determine if an otherwise lawful act has become unlawful or if there be justification, even if the motives are malevolent.
The evidence produced upon trial is overwhelmingly in favor of the defendant that even if the letter caused the discharge the doctor intended no harm. Certainly the doctor’s act was *795 justified by reason of Ms concept of duty to Ms Government. No malice could be attributed to Mm but even if some intent to do harm was part of his motivation, it was so mixed with thoughts of right and duty as to exonerate him. In any event, there is nothing in the evidence to contradict the doctor’s testimony that he felt compelled to make a full breast of the matter and that the letter was sent under the justifiable belief that it was a communication needed by the Government. Thus reasonable self-interest is alone justification sufficient to bar the suit based upon prima facie tort (Spivak v. Delma Studios, 15 Misc 2d 760).
The third basis for the claim is that the doctor was negligent because the letter set forth more than was required and that it was in fact untruthful. A statement of part of the truth may be evidence of lack of care; not so, as here, a narration of the whole truth, for only less than all the facts tend to mislead. Moreover, one cannot be charged with telling more than is required when he is specifieially asked to do so to clear up doubtful information previously supplied. Nor are the statements of the fact of alcoholism and periods of depression untrue and actionable because they differ from prior statements of respiratory and bronchial illness when the causes and effects are thereby explained.
In addition to the legal bars to plaintiff’s suit is the overwhelming proof that plaintiff’s discharge was due essentially to his absences and not to the disclosure. While the formal notice of discharge did make reference to the doctor’s letter and pointed out that it contradicted plaintiff’s attempted explanation for his absences, it is clear on plaintiff’s own testimony, that the Air Force gave him further opportunity to improve his attendance record even after the letter had been received — an opportunity which plaintiff apparently failed to satisfy, as shown by his continued absences thereafter. It is for the reasons stated that judgment for the defendant was directed.