ELLA QUARLES, Plaintiff in Error,

*v.*

ARTHUR SUTHERLAND, JR., M.D., Defendant in Error.

389 S.W.2d 249.

(*Nashville,* December Term, 1964.)

Opinion filed April 7, 1965.

STANLEY H. SIDICANE, Nashville, for plaintiff in error.

DAN E. McGUGIN, WATKINS, McGUGIN & STEWART, Nashville, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

This action was brought in Circuit Court against a practicing physician, defendant in error, for the alleged wrongful disclosing of professional secrets or information to an attorney representing a store in which the plaintiff suffered an accident. A demurrer to the declaration was filed. It was sustained by the trial judge, and the plaintiff in error has perfected her appeal to this Court.

The plaintiff's declaration averred, in substance, that on October 14, 1963, she sustained an injury by reason of an accident at the Top Value Stamp Store in Nashville. She was taken to the defendant's office where she was treated for such injuries. She alleges that it was unknown to her that the doctor was the regular physician of the Top Value Stamp Store, although she had been sent to the doctor by the store.

On November 6, 1963, the plaintiff's attorney advised the defendant that she was represented by counsel and requested that no medical reports be given to anyone without first notifying his office. Thereupon, the defendant wrote a letter to him, dated November 8, 1963, advising said attorney of his medical findings and forwarded a copy of the letter to the attorney for the Top Value Stamp Store.

The plaintiff alleged that the defendant violated the ethics of the medical profession in disclosing information and by doing so greatly prejudiced her case against the Top Value Stamp Store. She charged that the defendant had a duty to keep private and privileged all information he obtained by virtue of the contract of employment, and that the defendant doctor breached his duty by forwarding a copy of the report as alleged.

Further, the plaintiff alleged that under T.C.A. sec. 63-318 and sec. 63-319, a doctor's license may be revoked when the licensee has been guilty of unprofessional conduct, and such conduct is defined as "the willful betraying of a professional secret." It is claimed that this licensing statute imposes a positive duty upon the physician to keep secret his findings.

The basic issue which we must decide in this case is whether communications between physician and patient are by law privileged communications, and whether a disclosure of such information to a third party gives rise to a cause of action under the law.

Of significance in a discussion of this issue is that the common law of England, as it stood at and before the separation of the colonies has been adopted by the State of Tennessee, being derived from North Carolina, out of

which state the State of Tennessee was carved. The Acts of North Carolina, 1715, c. 31, and Acts of North Carolina, 1778, c. 5, preserved the common law, while Session Act 1789, c. 3, provided for its continuance in the State of Tennessee. *Polk v. Faris,* 17 Tenn. 209, 30 Am.Dec. 400 (1836) ; *McCorry v. King's Heirs,* 22 Tenn. 267, 39 Am. Dec. 165 (1842) ; *Smith v. State,* 215 Tenn. 314, 385 S.W.2d 748 (1965).

██ It is axiomatic that at common law neither the patient nor the physician had a privilege to refuse to disclose in court a communication of one to the other, nor does either have a privilege that the communication not be disclosed to a third person. 1 Morgan, Basic Problems of Evidence, ch. 5 (1954) ; 8 Wigmore, Evidence sec. 2380 (3rd ed.1961).

This rule was set forth in the English case of Duchess of Kingston's Trial, 20 How.St.Tr. 355, 573 (1776), reprinted in Notable British Trials Series (Melville ed. 1927), as follows:

"Mr. Hawkins, a physician, who had attended the accused and her alleged husband, when asked whether he knew from the parties of any marriage between them, answered, 'I do not know how far anything that has come before me in a confidential trust in my profession should be disclosed, consistent with my professional honor."

"If all your lordships will acquiesce, Mr. Hawkins will understand that it is your judgment and opinion that a surgeon has no privilege, where it is a material question in a civil or criminal cause to know whether parties were married or whether a child was born, to say that this introduction to the parties was in the

course of his profession and in that way he came to the knowledge of it. * * * If a surgeon was voluntarily to reveal these secrets, to be sure, he would be guilty of a breach of honor and of great indiscretion; but to give that information in a court of justice, which by the law of the land he is bound to do, will never be imputed to him as any indiscretion whatever.''

■ We have made a thorough search of the statutes of this State, and have found no statute which would alter the common law rule in this regard. While the arguments for and against making doctor-patient communications privileged are many, our Legislature has not seen fit to act on the matter and therefore, we must apply the common law rule as set forth above. For a thorough treatment of the subject see Chafee, ''Privileged Communication: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?'' 52 Yale L.Jour. 607 (1943).

■ Petitioner cites T.C.A. sec. 63-618 concerning grounds for revocation of license, and T.C.A. sec. 63-619 defining unprofessional conduct for our consideration. We have carefully studied these provisions and have concluded they are merely administrative provisions concerning the licensing of physicians. The standards set out therein are merely ethical in nature, and the non-adherence to these standards might constitute grounds for the revocation of the physician's license. Our view is that the statutes cited concern only the power of the State of Tennessee to revoke or continue a physician's license, and would have no application to the case *sub judice*. *Henderson v. Knoxville*, 157 Tenn. 477, 9 S.W.2d 697, 60 A.L.R. 652 (1928).

■ We are aware that physicians and surgeons are required by the ethics of their profession to preserve the secrets of their patients which have been communicated to them or learned from symptoms or examination of other bodily conditions. However, under the common law, applicable in this case, this ethical requirement is not enforceable by law and, therefore, a demurrer to a cause of action wholly dependent upon an alleged "patient-physician privilege" must be sustained.

■■ Of course, an examination of the fundamental principles underlying the privileged communications statutes which we do have in Tennessee, attorney-client, T.C.A. sec. 29-305, and husband-wife, T.C.A. sec. 24-103, shows that these statutes concern themselves only with matters of evidence to be used in a court of law or equity. The statutes do not purport to deal with common law causes of action or statutory negligence, but rather with the question of whether or not certain testimony is admissible in trial proceedings. Thus, even if this State recognized the doctor-patient privilege, it would have no bearing in a case where information was communicated to a third party. Actually, the petitioner is seeking to base a cause of action upon a rule of evidence. Morgan, Basic Problems of Evidence, supra; 8 Wigmore, Evidence, supra; 52 Yale L.Jour. 607 (1943).

We think that the only possible sounding of this lawsuit would be under allegations that there was an implied contract between the parties that the results of the examination would remain confidential or, in the alternative, slander, assuming the statements were untrue. However, proceedings along this line of reasoning could not be considered in this case as the declaration makes clear that Dr. Sutherland was not the plaintiff's doctor nor

did she at any time attempt to compensate him for his services. The plaintiff merely received free medical treatment from the Top Value Stamp Store's consulting physician. As concerns slander, there were no factual allegations that the statements were untrue or slanderous in nature.

Lastly, we do not think that the petitioner has in any way been prejudiced by the letter complained of, which was sent to the attorney of the Top Value Stamp Store. The letter, Exhibit #1, merely contained the doctor's diagnosis and the treatment prescribed. In the event of a suit by the plaintiff against the store, the information contained in the letter would readily be available to the defendant under the Discovery Deposition Act of 1959, T.C.A. sec. 24-1201, and sections following.

The judgment is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, HOLMES and CHATTIN, JUSTICES, concur.