287 So.2d 824

**Larry L. HORNE**

v.

**William B. PATTON.**

**SC 409.**

Supreme Court of Alabama.

Dec. 6, 1973.

Rehearing Denied Jan. 24, 1974.

James J. Duffy, Jr., and E. L. Mc-Cafferty, III, Mobile, for appellee.

Irvin Grodsky, Mobile, for appellant.

**704**

BLOODWORTH, Justice.

Plaintiff Larry Horne comes here on a voluntary nonsuit assigning as error the trial court's ruling in sustaining defendant's demurrer to his complaint.

This case is alleged to have arisen out of the disclosure by Dr. Patton, defendant herein, to plaintiff's employer of certain information acquired in the course of a doctor-patient relationship between plaintiff Horne and defendant doctor, contrary to the expressed instructions of patient Horne. Plaintiff Horne's original complaint asserted that the alleged conduct constituted a breach of fiduciary duty and an invasion of the plaintiff's right of privacy. Demurrer to this complaint was sustained. Subsequently, three amended counts were filed and demurrer to these counts was also sustained. Plaintiff thereupon took a voluntary nonsuit and filed this appeal.

There are sixty-eight assignments of error on this appeal. Appellant has expressly waived all but twenty-two, relating to the trial court's sustaining of defendant's demurrer to the complaint as last amended.

Count I of the amended complaint alleges in substance that defendant is a medical doctor, that plaintiff was a patient of defendant doctor for valuable consideration, that plaintiff instructed defendant doctor not to release any medical information regarding plaintiff to plaintiff's employer, and that defendant doctor proceeded to release full medical information to plaintiff's employer without plaintiff's authorization. Count I further alleges that the doctor-patient relationship between plaintiff and defendant was a confidential relationship which created a fiduciary duty from the defendant-doctor to the plaintiff-patient, that the unauthorized release of said information breached said fiduciary duty, moreover that said disclosure violated the Hippocratic Oath which defendant had taken and therefore constitutes unprofessional conduct. Plaintiff avers that as a di-

rect and proximate result of the release of said information, plaintiff was dismissed from his employment.

Count II alleges the same basic facts but avers that the release of said information was an unlawful and wrongful invasion of the plaintiff's privacy.

Count III alleges, in substance, that plaintiff entered into a physician-patient contractual relationship for a consideration with the defendant, whereby through common custom and practice, impliedly, if not expressly, defendant agreed to keep confidential personal information given to him by his patient, that plaintiff believed the defendant would adhere to such an implied contract, with the usual responsibility of the medical profession and the traditional confidentiality of patient communications expressed in the Hippocratic Oath taken by the defendant. Count III goes on to allege that defendant breached said contract by releasing full medical information regarding the plaintiff to plaintiff's employer.

It is defendant's initial contention that this court cannot review appellant's assignments of error because they are deficient, relying primarily upon Alldredge v. Alldredge, 288 Ala. 625, 264 So.2d 182. Appellant's assignments of error are in the following form:

> "47. The court erred in sustaining ground No. 1 of Defendant's demurrer to the complaint as last amended and filed June 20, 1972."

The other assignments of error are in the same form assigning as error the trial court's sustaining the remaining twenty-one grounds of defendant's demurrer.

The trial court's judgment sustaining the demurrer does not give specific ground for its decision. It simply reads: "* * * demurrer * * * to the complaint as last amended * * * is hereby sustained." Clearly, the approved practice has been to simply assign as error the sustaining of the demurrer to each count of the amended complaint without enumerating the specific grounds of demurrer severally. But, this court has heretofore held that the court will look at the merits where the assignment clearly presents the question for review, even though there may have been a better way to frame the assignment. See, e.g., Alabama Electric Coop., Inc. v. Alabama Power Co., 283 Ala. 157, 214 So.2d 851 (1968).

In the case at bar, plaintiff has assigned as error the sustaining of the demurrer on each of the several grounds specified by defendant in his demurrer. Every ground before the trial court is included. While the judgment does not reveal which grounds of the demurrer the trial judge considered to be valid, it is obvious it must have been one or more of those enumerated by plaintiff in his assignments. It seems clear, beyond peradventure, from the assignments when considered collectively, that plaintiff challenges the trial court's sustaining of the demurrer to each count of his amended complaint. Alldredge v. Alldredge, supra, is distinguishable in this regard, and there is no sound reason for expanding this rule to encompass the instant case. It follows then that plaintiff's assignments of error do comply with Rule 1 of the Revised Rules of Practice of the Supreme Court of Alabama, however inartfully they may be drawn.

Defendant next contends that, because plaintiff assigned as error the sustaining of defendant's demurrer to the complaint as a whole, if any one of the three counts are demurrable the judgment of the trial court should be affirmed, citing Whatley v. Alabama Dry Dock and Shipbuilding Co., 279 Ala. 403, 186 So.2d 117 (1966). While counsel for plaintiff admits that this appears to be the prevailing law at present, he urges this court to consider the merits of each of the three counts. Given the re-

sult we reach, we need not consider this contention.

And, now to consider each of the counts.

## Count I

Whether or not there is a confidential relationship between doctor and patient which imposes a duty on the doctor not to freely disclose information obtained from his patients in the course of treatment is a question of first impression in this state. The question has received only a limited consideration in other jurisdictions, and its resolution has been varied. Those states which have enacted a doctor-patient testimonial privilege statute have been almost uniform in allowing a cause of action for unauthorized disclosure. See, e.g., Hammonds v. Aetna Casualty & Surety Co., 237 F.Supp. 96, motion for reconsideration denied, 243 F.Supp. 793 (N.D.Ohio, 1965); Berry v. Moench, 8 Utah 2d 191, 331 P.2d 814 (1958); Clark v. Geraci, 29 Misc.2d 791, 208 N.Y.S.2d 564 (1960); Felis v. Greenberg, 51 Misc.2d 441, 273 N.Y.S.2d 288 (1966); Smith v. Driscoll, 94 Wash. 441, 162 Pac. 572 (1917).

Alabama, however, has not enacted such a privilege statute. In reviewing cases from other states which also do not have a doctor-patient testimonial privilege, the jurisdictions are split about evenly on this issue. After a careful consideration of this issue, it appears that the sounder legal position recognizes at least a qualified duty on the part of a doctor not to reveal confidences obtained through the doctor-patient relationship.

In the case of Hague v. Williams, 37 N. J. 328, 181 A.2d 345 (1962), the Supreme Court of New Jersey considered the question as to whether an action will lie for unauthorized disclosure by a doctor of information obtained in the doctor-patient relationship. The case arose in the context of a disclosure by a physician of the medical history of a deceased patient to the patient's life insurers. After carefully noting that New Jersey, unlike several other states which had previously recognized such a cause of action, did not recognize a doctor-patient testimonial privilege, the New Jersey court went on to distinguish testimonial and non-testimonial disclosure. The court found a confidential relationship between doctor and patient giving rise to a general duty not to make non-testimonial disclosures of information obtained through the doctor-patient relationship. The court stated the duty as follows:

"However, the same philosophy does not apply with equal rigor to non-testimonial disclosure. The above ethical concepts, although propounded by the medical profession under its own code, are as well expressive of the inherent legal obligation which a physician owes to his patient. The benefits which inure to the relationship of physician-patient from the denial to a physician of any right to promiscuously disclose such information are self-evident. On the other hand, it is impossible to conceive of any countervailing benefits which would arise by according a physician the right to gossip about a patient's health.

"A patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts may become public property. Only thus can the purpose of the relationship be fulfilled. So here, when the plaintiffs contracted with defendant for services to be performed for their infant child, he was under a general duty not to disclose frivolously the information received from them, or from an examination of the patient.

"This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions prompted by the supervening interest of society. *We conclude, therefore, that ordinarily a physician receives information relating to a patient's health in a confidential ca-*

*pacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands.* Without delineating the precise outer contours of the exceptions, it may generally be said that disclosure may, under such compelling circumstances, be made to a person with a legitimate interest in the patient's health. * * *" (Emphasis added)

(The court affirmed the trial court's judgment which denied relief to the plaintiffs, holding that the particular facts in the *Hague* case fell within an exception to this general rule; the parent-plaintiffs were held to have lost their right to non-disclosure by their act of filing a claim with their insurer involving the health of their child, the patient.)

Although deciding the case on another ground, an intermediate Pennsylvania appellate court in Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142 (1962), dealing with an unauthorized disclosure to an adverse party, went one step farther and condemned a disclosure made prior to trial, even though the information disclosed would *not* have been privileged at trial due to Pennsylvania's lack of a doctor-patient testimonial privilege statute. The court observed:

" * * * We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezickson's role in inducing

Dr. Murtagh's breach of his confidential relationship to his own patient is to be and is condemned."

█ Furthermore, decisions from states with testimonial privilege statutes are not necessarily inapposite. Where the tort duty is based upon breach of the statute or the public policy expressed by the statute, this may be true. However, whether or not testimony may be barred at trial does not necessarily control the issue of liability for unauthorized extra-judicial disclosures by a doctor.

This was recognized by the Supreme Court of Nebraska in the case of Simonsen v. Swenson, 104 Neb. 224, 177 N.W. 831 (1920). There the court, after noting that Nebraska had a testimonial privilege statute, stated that such statute did not apply to non-testimonial disclosures and therefore had no bearing upon the case at hand involving extra-judicial disclosures. In seeking a source of a duty of secrecy on the part of the defendant doctor, the court pointed to a licensing provision that included "betrayal of a professional secret to the detriment of a patient" as unprofessional conduct. From this expression of policy the court derived a legal duty of secrecy on the part of the defendant doctor, viz:

"By this statute, it appears to us, a positive duty is imposed upon the physician, both for the benefit and advantage of the patient as well as in the interest of general public policy. The relation of physician and patient is necessarily a highly confidential one. It is often necessary for the patient to give information about himself which would be most embarrassing or harmful to him if given general circulation. This information the physician is bound, not only upon his own professional honor and the ethics of his high profession, to keep secret, but by reason of the affirmative mandate of the statute itself. A wrongful breach of such confidence, and a betrayal of such

trust, would give rise to a civil action for the damages naturally flowing from such wrong. * * * "

See also the discussions of policy in the Hammonds v. Aetna Casualty & Surety Co., Berry v. Moench and Smith v. Driscoll, supra.

It should be noted that Alabama has a very similar statute which gives the state licensing board for the healing arts the power and imposes on it the duty of suspending or revoking a doctor's license who wilfully betrays a professional secret. Title 46, § 257(21), Code of Alabama 1940, as last amended, reads as follows:

"The state licensing board for the healing arts shall have the power and it is its duty to suspend for a specified time, to be determined in the discretion of the board, or revoke any license to practice the healing arts or any branch thereof in the state of Alabama whenever the licensee shall be found guilty of any of the following acts or offenses;

" * * *

"(14) Wilful betrayal of a professional secret;"

Moreover, the established ethical code of the medical profession itself unequivocally recognizes the confidential nature of the doctor-patient relationship. Each physician upon entering the profession takes the Hippocratic Oath. One portion of that required pledge reads as follows:

"Whatever in connection with my professional practice, or not in connection with it, I see or hear, in the life of men, which ought not be spoken of abroad, I will not divulge, as reckoning that all such should be kept secret."

This pledge has been reaffirmed in the Principles of Medical Ethics promulgated by the American Medical Association in Principle 9, viz:

"A physician may not reveal the confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community." American Medical Association, Principles of Medical Ethics, 1957, § 9 (Published by AMA).

When the wording of Alabama's state licensing statute is considered alongside the accepted precepts of the medical profession itself, it would seem to establish clearly that public policy in Alabama requires that information obtained by a physician in the course of a doctor-patient relationship be maintained in confidence, unless public interest or the private interest of the patient demands otherwise Is it not important that patients seeking medical attention be able to freely divulge information about themselves to their attending physician without fear that the information so revealed will be frivolously disclosed? As the New Jersey Supreme Court so aptly pointed out, what policy would be served by according the physician the right to gossip about a patient's health.

Only two courts have refused to recognize any duty on the part of the physician not to disclose. They are Collins v. Howard, 156 F.Supp. 322 (S.D.Ga., 1957) and Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249 (1965). Neither the reasoning nor the result of either of these two cases is impressive. Both opinions fail to adequately separate the issue of testimonial privilege and the duty of confidentiality in extra-judicial communications. This problem is further complicated in that both cases involve disclosures in the context of pending litigation, such that the plaintiffs suffered no injury by virtue of the allegedly wrongful disclosures. Moreover, both courts found that no doctor-patient relationship existed on the facts there involved.

■■ It is thus that it must be concluded that a medical doctor is under a general

duty not to make extra-judicial disclosures of information acquired in the course of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action. It is, of course, recognized that this duty is subject to exceptions prompted by the supervening interests of society, as well as the private interests of the patient himself. Whether or not the alleged disclosure by the defendant doctor in the instant case falls within such an exception, is not now an issue before this court.

The trial court erred in sustaining the demurrer to Count I.

Count II

The gravamen of Count II is that defendant's release to plaintiff's employer of information concerning plaintiff's health constituted an invasion of plaintiff's privacy.

[redacted] This court has recognized the right of a person to be free from unwarranted publicity or unwarranted appropriation or exploitation of one's personality, publicization of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion of one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961); Abernathy v. Thornton, 263 Ala. 496, 83 So.2d 235 (1955); Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1947).

[redacted]. Whether or not unauthorized disclosure of a person's medical record constitutes an invasion of this right of privacy is likewise a question of first impression in Alabama. Looking to other jurisdictions which have considered this question, those courts have almost uniformly recognized such disclosure as a violation of the patient's right of privacy. See cases collected at 20 A.L.R.3d 1109, 1114–15.

As a federal district court so aptly stated in Hammonds v. Aetna Casualty & Surety Co., 243 F.Supp. 793 (N.D.Ohio, 1965), involving disclosure of medical information concerning the patient to the patient's insurer:

> "When a patient seeks out a doctor and retains him, he must admit him to the most private part of the material domain of man. Nothing material is more important or more intimate to man than the health of his mind and body. Since the layman is unfamiliar with the road to recovery, he cannot sift the circumstances of his life and habits to determine what is information pertinent to his health. As a consequence, he must disclose all information in his consultations with his doctor—even that which is embarrassing, disgraceful or incriminating. To promote full disclosure, the medical profession extends the promise of secrecy referred to above. The candor which this promise elicits is necessary to the effective pursuit of health; there can be no reticence, no reservation, no reluctance when patients discuss their problems with their doctors. But the disclosure is certainly intended to be private. If a doctor should reveal any of these confidences, he surely effects an invasion of the privacy of his patient. We are of the opinion that the preservation of the patient's privacy is no mere ethical duty upon the part of the doctor; there is a legal duty as well. The unauthorized revelation of medical secrets, or *any* confidential communication given in the course of treatment, is tortious conduct which may be the basis for an action in damages."

Unauthorized disclosure of intimate details of a patient's health may amount to unwarranted publicization of one's private affairs with which the public has no legitimate concern such as to cause outrage, mental suffering, shame or humiliation to a person of ordinary sensibilities. Nor can it be said that an employer is neces-

sarily a person who has a legitimate interest in knowing each and every detail of an employee's health. Certainly, there are many ailments about which a patient might consult his private physician which have no bearing or effect on one's employment. If the defendant doctor in the instant case had a legitimate reason for making this disclosure under the particular facts of this case, then this is a matter of defense.

The trial court erred in sustaining the demurrer to Count II.

### Count III

The gravamen of Count III is that the alleged disclosure breached an implied contract to keep confidential all personal information given to defendant doctor by his patient. This count alleges that defendant doctor entered into a physician-patient contractual relationship wherein the plaintiff agreed to disclose to defendant all facts which would help him in his diagnosis and treatment of the plaintiff, that defendant agreed to treat the plaintiff to the best of his medical ability, and to keep confidential all personal information given to him by the plaintiff. It is alleged that this agreement is implied from the facts through common custom and practice.

 This court has often stated that an implied contract arises where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. See, e. g., Broyles v. Brown Engineering Company, 275 Ala. 35, 151 So.2d 767 (1963). Defendant admits in his brief that the facts and circumstances alleged are such as to show a mutual intent to contract according to the ordinary course of dealing between a physician and his patient. The point of difference between the parties appears to be whether or not there is an implied term in the ordinary course of dealing between a doctor and patient that information dis-

closed to the doctor will be held in confidence.

Again, this question is one of first impression in this state. Few courts have considered this question. One of the fullest discussions on this point appears in Hammonds v. Aetna Casualty & Surety Co., supra, viz:

"Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations (of significance here) are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. The promise of secrecy is as much an express warranty as the advertisement of a commercial entrepreneur. Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract."

A Pennsylvania court in Clayman v. Bernstein, 38 Pa.D & C 543 (1940), appears also to have recognized an implied term of confidentiality in the doctor-patient contract as it permitted the husband of a patient to maintain suit against a doctor for threatened disclosure of medical information concerning his wife:

"It would seem, moreover, that the act of defendant directly violated the rights of the husband. He is the person who is liable for his wife's medical treatment and it is with him that the contract of employment of defendant as a physician is made. Such a contract contains many

implied provisions upon the breach of which the husband has a right of action. The most common of these perhaps are actions for negligence or malpractice, although they might sound in tort independent of contract. It may very well be, however, that a breach of trust or confidence, so necessarily associated with a contract of this type, may occur. Is not the unauthorized act of taking this photograph such a breach? * * *"

Although the Tennessee Supreme Court denied there was a cause of action in tort for unauthorized disclosure of medical information concerning a patient, it admitted that there might be a breach of an implied contract. Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249, 252 (1965).

We have not been cited to, nor have we found in our research, any case in which a cause of action for the breach of an implied contract of confidentiality on the part of the doctor has been rejected. Moreover, public knowledge of the ethical standards of the medical profession or widespread acquaintance with the Hippocratic Oath's secrecy provision or the AMA's Principles of Ethics or Alabama's medical licensing requirements of secrecy (which is a common provision in many states) singly or together may well be sufficient justification for reasonable expectation on a patient's part that the physician has promised to keep confidential all information given by the patient.

Again, of course, any confidentiality between patient and physician is subject to the exceptions already noted where the supervening interests of society or the private interests of the patient intervene. These are matters of defense.

The trial court erred in sustaining demurrer to Count III.

The judgment of the trial court is therefore due to be reversed and remanded.

Reversed and remanded.

HEFLIN, C. J., and HARWOOD and JONES, JJ., concur.

MERRILL, MADDOX, and FAULKNER, JJ., concur in the result.

McCALL, J., dissents.

HEFLIN, Chief Justice (concurring):

I concur in the opinion of Justice Bloodworth but I would add to it.

While the language which mentions a defense to these causes of action—"supervening interests of society" and the words from Hague v. Williams, 37 N.J. 328, 181 A.2d 345, which carves out an exception when the public interest so demands, probably include within their scope a disclosure made to a legitimate research group, I would, nevertheless, specify that such a disclosure is a defense.

MERRILL, Justice (concurring specially):

I would treat any reference in the pleadings to the Hippocratic Oath as surplusage because I do not think that it has any bearing on the cause of action. I think a cause of action is averred regardless of whether the patient had ever known that there was such an oath, or whether he was able to state a single provision of the oath.

McCALL, Justice (dissenting).

The prime issue is whether or not the trial court erred in sustaining the demurrer. In general, the complaint charges that the defendant wrongfully disclosed to the plaintiff's employer that the plaintiff suffered from a longstanding nervous condition with feelings of anxiety and insecurity. The verity of this medical opinion is not denied. The complaint does not charge that the defendant gave general circulation to this information as mentioned in Alexander v. Knight, 197 Pa.Super. 79, 177 A. 2d 142, cited in the above opinion, or that the defendant spoke it abroad (in wide cir-

culation). Nor does the complaint charge that the defendant frivolously disclosed or gossiped about the defendant's health as the opinion intimates. We are not writing to such issues. Those circumstances alluded to in cited cases are not the averments in this case.

Counts I and II of the amended complaint attempt to charge more than a single cause of action for the recovery of damages against the defendant. In Count I, the plaintiff undertakes to aver a fiduciary duty, allegedly arising out of a doctor-patient relationship, which the plaintiff charges was breached. He also undertakes to aver, in the same count, a claim for recovery in his behalf for an alleged breach of the Hippocratic oath. In Count II, the plaintiff undertakes to aver a claim for damages for allegedly releasing medical information regarding the plaintiff to the latter's employer. The plaintiff further attempts to aver, in the same count, an unlawful and wrongful invasion of the plaintiff's privacy by reason of the release of the said information. As in Count I, the plaintiff also counts on an alleged breach of the Hippocratic oath.

Irrespective of whether the matters, if properly alleged, would state good causes of action, the fact remains that the plaintiff has misjoined in a single count separate and distinct causes of action which is not sanctioned under our system of pleading. Clikos v. Long, 231 Ala. 424, 165 So. 394; Vulcan Materials Company v. Grace, 274 Ala. 653, 658, 151 So.2d 229.

If the appellant in the case at bar did not argue in his brief that the misjoinders were permissible, it is not the duty of the appellee to argue that the misjoinders were erroneous. The court in Allen v. Axford, 285 Ala. 251, 263, 231 So.2d 122 said:

"Counsel for the appellee has performed his full duty when he files his brief replying to the points raised in appellant's brief. If appellant's brief is deficient in form, counsel for appellee is justified in relying on this deficiency in answering the contentions of the appellant."

See also Metzger Brothers, Inc. v. Friedman, 288 Ala. 386, 400, 261 So.2d 398.

If a trial court generally sustains a demurrer to a complaint, without specifying on which grounds of demurrer it relies, an appellate court must sustain the trial court, if any one ground of demurrer be found properly sustainable. Brown v. W. R. M. A. Broadcasting Co., 286 Ala. 186, 238 So. 2d 540; Crommelin v. Capitol Broadcasting Co., 280 Ala. 472, 195 So.2d 524; McKinley v. Simmons, 274 Ala. 355, 148 So.2d 648. In *Brown,* supra, the plaintiff sued the defendant for slander, a ground akin to the allegations in the case at bar. The trial court sustained the defendant's demurrer and entered a judgment of nonsuit, and the plaintiff appealed. The court stated:

"'Where defendant assigns several grounds of demurrer * * *, and the plaintiff declines to plead further and appeals from the judgment sustaining the demurrer, this court on appeal from the judgment must sustain the trial court if any one ground of the demurrer was properly sustained.'"

The court agreed that it need only to consider whether a complaint is demurrable on any one of the grounds given in a document.

In Count III, the plaintiff relies on the breach of an alleged implied contract that the defendant would not divulge his medical findings about the plaintiff to the latter's employer. If there is no legal duty not to make such a disclosure, then there can be no implied contract not to disclose the information. In my opinion there is no legal duty not to make the disclosure in this case.

Alabama is a common law state. Tit. 1, § 3, Code of Alabama, 1940; Hollis v. Crittenden, 251 Ala. 320, 37 So.2d 193. At common law no privilege between physician and patient existed as to communica-

tions between physician and patient. This is the rule in the absence of a contrary statute. 58 Am.Jur. Witnesses, § 401, notes 20 and 1 on page 232. While statutes have been enacted in most states making communications between physician and patient privileged from compulsory disclosure in courts of justice, Alabama has not enacted such a law. The common law therefore remains in effect. In 61 Am.Jur.2d Physicians, Surgeons, Etc., § 101, it is said that at common law neither the patient nor the physician has the privilege to refuse to disclose in court a communication of one to the other, nor does either have a privilege that the communication not be disclosed to a third person. Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249, 20 A.L.R.2d 1103, citing 1 Morgan, Basic Problems of Evidence, Ch. 5 (1954); 8 Wigmore, Evidence § 2380 (3rd Ed. 1961). In *Quarles, supra,* a store physician, who treated the plaintiff, immediately after her fall in the store, sent a copy of his report of findings to her lawyer and to the store's lawyer also, although he was requested not to send any medical report to anyone until notified by the plaintiff's lawyer.

The Tennessee Supreme Court said:

"We have made a thorough search of the statutes of this State, and have found no statute which would alter the common law rule in this regard. While the arguments for and against making doctor-patient communications privileged are many, our Legislature has not seen fit to act on the matter and, therefore, we must apply the common law rule as set forth above. For a thorough treatment of the subject see Chafee, 'Privileged Communication: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?' 52 Yale L.Jour. 607 (1943).

. "Petitioner cites T.C.A. sec. 63–618 concerning grounds for revocation of license, and T.C.A. sec. 63–619 defining unprofessional conduct for our consideration. We have carefully studied these provisions and have concluded they are merely administrative provisions concerning the licensing of physicians. The standards set out therein are merely ethical in nature, and the nonadherence to these standards might constitute grounds for the revocation of the physician's license. Our view is that the statutes cited concern only the power of the State of Tennessee to revoke or continue a physician's license, and would have no application to the case sub judice. Henderson v. Knoxville, 157 Tenn. 477, 9 S. W.2d 697, 60 A.L.R. 652 (1928).

"We are aware that physicians and surgeons are required by the ethics of their profession to preserve the secrets of their patients which have been communicated to them or learned from symptoms or examination of other bodily conditions. However, under the common law, applicable in this case, this ethical requirement is not enforceable by law and, therefore, a demurrer to a cause of action wholly dependent upon an alleged 'patient-physician privilege' must be sustained."

It is important to observe that the information allegedly revealed by the physician in the present complaint did not constitute gossiping about his patient's health or a frivolous disclosure of information, as the court alluded to in Hague v. Williams, 37 N.J. 328, 181 A.2d 345.

In Hague v. Williams, supra, the court said:

"This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions prompted by the supervening interest of society. * * *"

The court held that where the public interest or the private interest of a patient so demands, disclosure may be made to a person with a legitimate interest in the patient's health, and, where in the course of examining an infant patient the physician

became aware of a pathological heart condition, the physician was not barred from disclosing such condition to an insurer to whom the parents had applied for life insurance on the infant, the court holding that when the parents made a claim for insurance, they lost any rights to nondisclosure that they may have had. *Hague,* supra, p. 349. In my opinion the overriding competing interest and responsibility of an employer for the welfare of all of his employees, to the public who come to his establishment and who buy his merchandise, and to the furtherance of his own business venture, should entitle him to be free from the shackles of secrecy that would prevent a physician from disclosing to the employer critical information concerning the physical or mental condition of his employees.