BOOKOUT, Judge.
Assault with intent to murder; sentence: fifteen years imprisonment.
On Saturday, June 18, 1977, appellant and his wife hosted a gathering of friends at their trailer home. During the course of the day, appellant consumed several beers brought to the house by Jack Watkins, the victim in this case. Appellant and the victim engaged in target shooting for a good part of the afternoon. Afterwards, appellant and his guests went down to a strip mine pit filled with water where all the parties began swimming, with the exception of appellant who watched from the bank.
While the group was swimming, one of appellant’s children fell from the bank. This event sparked an argument from which this incident arose. The child exclaimed that appellant had pushed him from the bank, and appellant’s wife stated that she was leaving to take him to her mother’s. Appellant demanded that his wife not do this and began using profane language. When the victim intervened in an effort to calm appellant, the appellant told him that it was none of his business and headed for the trailer. Appellant’s wife stated that appellant was going for his gun; however, the victim, his wife and appellant’s wife followed closely behind appellant. As the party entered the trailer with the victim’s wife in the lead, appellant raised a shotgun and fired, striking Jack Watkins in the arm. The victim’s arm was later amputated as a result of the blast. Several pellets from a second shot fired by appellant struck appellant’s wife in the neck, shoulder and leg. When Jack Watkins’ wife attempted to drive her husband and appellant’s wife from the scene to the hospital, appellant shot out one of the tires on the car in which the group was riding. Subsequently, a neighbor assisted Mrs. Watkins in getting her husband and appellant’s wife to the hospital.
I
At arraignment, appellant entered pleas of not guilty and not guilty by reason of insanity to the charge against him. It appears from the record that, in conjunction with the plea of insanity, appellant was sent to the University of Alabama Psychological Clinic for evaluation of his sanity at the time of the commission of the offense and of his present ability to stand trial.
During the presentation of the State’s case, James E. Morris, Jr., testified that he, in his role as psychiatric consultant to the University Psychological Clinic, was asked to examine appellant for a psychiatric evaluation. Appellant then objected to Dr. Morris revealing the results of the evaluation claiming that it “should be privileged information such as that between a doctor or a lawyer and his client.” The trial court overruled appellant’s objection following lengthy argument by counsel.
It should be noted that in Alabama there is no privilege covering communications between a physician and his patient, no statute having been enacted to create one. Horne v. Patton, 291 Ala. 701, 287 *1158 So.2d 824 (1973). However, appellant insists that the trial court committed reversible error in failing to recognize the privilege delineated in § 34-26-2, Code of Ala. 1975, which provides:
“For the purpose of this chapter, the confidential relations and communications between licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.”
Appellant states in brief that failure to include psychiatrists in the operation of the above statute would create the anomaly of providing more protection to patients of psychologists than to patients of psychiatrists. He further cites § 34-26-1, Code of Ala.1975, which defines practice as a psychologist. That section provides in subsection (a):
“A person practices as a ‘psychologist’ within the meaning of this chapter when he holds himself out to be a psychologist and/or renders to individuals or to the public for remuneration any service involving the application of recognized principles, methods and procedures of the science and profession of psychology, such as interviewing or administering and interpreting tests of mental abilities, aptitudes, interests and personality characteristics for such purposes as psychological evaluation or for such purposes as overall personality appraisal .or classification, personality counseling, psychotherapy or personality readjustment.”
Appellant argues that since the professional techniques of the psychologist and psychiatrist are similar in reaching the evaluation of a subject, the privilege should also be extended to psychiatrist-patient relationships.
We do not agree. A psychiatrist by definition is a medical physician though he shares certain procedures and techniques with a psychologist. It is a general rule of statutory construction which this court cannot ignore that, absent any indication to the contrary, words should be given their ordinary and normal meaning. Adams v. Mathis, Ala., 350 So.2d 381 (1977). Nothing in the statute cited by the appellant indicates that the legislature intended to include psychiatrists in the same category as psychologists, an action which could have been easily taken.
Furthermore, even if the above mentioned section was extended to include psychiatrists, the trial court would have committed no error in allowing Dr. Morris to testify. Appellant raised the defense of insanity and offered the testimony of a clinical psychologist and a psychiatrist to support his plea. This action would have constituted a waiver of the privilege, assuming that it existed. To hold otherwise would allow a defendant to call only those psychologists and psychiatrists he desired and then on a claim of privileged communication object to the testimony of the State’s experts who examined him for the same purpose. This he cannot do. State v. Cochran, 356 Mo. 778, 203 S.W.2d 707 (1947); Hudman v. State, 89 Okl.Cr. 160, 205 P.2d 1175 (1949).
II
As part of his defense of insanity, appellant offered the testimony of Dr. William Janzen, a' clinical psychologist at the University of Alabama Psychological Clinic. In part, Dr. Janzen testified that, based on his examination of appellant, appellant was unable to control himself and did not know the difference between right and wrong on June 18, 1977.
During cross-examination of Dr. Janzen, the following occurred:
“Q. ... I ask you this, is psychiatry and psychology, are they exact sciences?
“A. If you mean by that can we predict accurately each time?
“Q. That’s exactly what I’m asking you.
“A. No.
“Q. They are not?
“A. They are not.
“Q. Now, isn’t it a fact that sixty percent, if they were sixty percent accurate, *1159 that would be a very low estimate of how accurate psychologists and psychiatrists are?
“A. No. That’s an underestimate.
“Q. That’s an underestimate?
“A. Witness nods head (yes).
♦ * # * * *
“Q. Have you ever heard of Dr. Joseph Zubin?
“A. Uh huh (yes).
“Q. Are you familiar with the fact that he has written that the chances of two psychiatrists, and I emphasize psychiatrists, agreeing on the diagnosis of the same individual are less than sixty percent?
“MR. WEBB: Now, Judge, we’re going to—
“A. Diagnosis? Yes.
“MR. WEBB: Judge, we’re going to ob--ject to the question—
“MR. JAFFE: He’s already answered the question.
“THE COURT: Overruled.
“MR. JAFFE: Thank you, Judge.”
Appellant contends that the trial court erred in overruling his objection, stating that there was no meaningful identification of the writing used by the assistant district attorney to cross-examine Dr. Janzen.
It is well established that a learned treatise on a subject of science or art is admissible in evidence provided that it is testified to by an expert as being a standard and trustworthy authority on the subject in question. Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953); Gamble, McElroy’s Alabama Evidence, § 258.01 (3d ed. 1977). Clearly, the State failed to properly authenticate the text through the witness being cross-examined. However, the appellant’s objection came after the answer was given and was too late. Neither was there a motion to exclude the answer of the witness. Oatsvall v. State, 57 Ala.App. 240, 327 So.2d 735, cert. denied, 295 Ala. 414, 327 So.2d 740 (1976).
Ill
Appellant also argues that the trial court committed several errors in giving certain supplemental instructions to the jury, including a so-called “dynamite charge.” It does not appear from the record that counsel took exception to any of these instructions, but waited to complain of the alleged errors on motion for a new trial. Thus, these instructions are not properly before us for review. Hafley v. State, Ala.Cr.App., 342 So.2d 408, cert. denied, Ala., 342 So.2d 412 (1977).
We have examined appellant’s other contentions of error and find that they are without merit. The judgment of conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.