Nicholas M. Pette, J.
This is an application under article 78 of the Civil Practice Law and Rules for judgment annulling respondent’s “ order purporting to terminate the * * * [petitioner’s] appointment * * * as a staff physician at the City Hospital Center at Elmhurst and relieving him of his duties as President of the Medical Board and Director of Medicine, and suspending the Medical Board”.
Petitioner claims that respondent, in dismissing him without consulting with the medical board and in suspending the medical board, exceeded the powers conferred upon respondent by the New York City Charter. Respondent contends that petitioner was not dismissed but merely placed on leave following the latter’s denial that he had resigned. Respondent’s attorney states that the dismissal of any member of the hospital staff 1 ‘ would have to be in accordance with § 585 of the Charter which prevents the termination of a staff member’s appointment without previous consultation with the Medical Board”, but asserts that “ there is no statutory provision which prevents the Commissioner from placing a member of the medical staff on a temporary leave of absence without consulting the Medical Board”. As to the action taken with respect to the medical board as a whole, i.e., placing it on a temporary leave of absence, respondent urges that such was within the permissible bounds of his discretionary power. Although respondent states in paragraph ‘ ‘ eleventh ’ ’ of his answer that petitioner and the medical board members have “ apparently resigned ” by a telegram sent to the Mayor of the City of New York on February 14, 1964 over petitioner’s name “ fob, the visiting staff ”, respondent’s statements on page 28 of his affidavit imply that he does not consider said telegram an effective resignation.
Section 583 of the New York City Charter grants to respondent “ all the powers and duties ” of the Department of Hospitals. Section 583-a vests in the Department of Hospitals the general power to 1 ‘ Maintain and operate all * * * institutions of the city for the care of sick, injured, aged or infirm persons ’ ’. Section 585 provides, in pertinent part, as follows:
‘ ‘ a. There shall be a medical staff for each hospital or institution under the jurisdiction of the department. The medical staff shall be appointed by the commissioner and shall consist *257 of such number of attending and consulting physicians as he may determine. The medical staff of each hospital or institution shall organize and appoint a medical board of such hospital or institution, subject to such general rules as the commissioner may prescribe.
‘ ‘ b. Staff appointments may be terminated at any time by the commissioner after consultation with the medical board of the hospital or institution affected, and a vacancy in any staff or board may be filled by the commissioner after like consultation. ’ ’
It appears that respondent has promulgated general rules pursuant to the authority conferred by subdivision a of section 585. Those rules, as quoted by petitioner’s attorney, are as follows: ‘1 Every member of the Visiting Staff holding the rank of Visiting Physician, Surgeon, or Dentist, whether he be assigned to a regular or special service, shall automatically become a member of the Medical Board with the right to vote. The Directors of Pathology, Roentgenology, Radiation Therapy, Physical Medicine, Anesthesia, and Psychiatry, who may or may not be full time employees of the City of New York, shall be members of the Medical Board with vote. * " * The officers of the Medical Board shall be President, Vice-President, Secretary and Treasurer. The offices of Secretary and Treasurer may be combined at the discretion of the Medical Board. * * * The officers shall be elected for a term of one year by ballot at the Annual Meeting and shall assume their duties on January 1st of the next succeeding year.”
It is clear, under subdivision b of section 585, that respondent lacks power to dismiss any member of a hospital staff without prior consultation with the medical board. (Teplitsky v. City of New York, 133 N. Y. S. 2d 260.) This, as above noted, respondent concedes. Assuming, arguendo, that petitioner has not been dismissed, but, as respondent claims, has merely been placed on leave by respondent’s letter of February 18, 1964, the absence of a statutory provision which prevents respondent from so acting does not imply that such action is permissible. Respondent’s powers are limited to those conferred upon him. (Cf. Matter of Village of Boonville v. Maltbie, 272 N. Y. 40, 47; Matter of Kasper v. O’Connell, 38 Misc 2d 3, 5.) Thus, if respondent possesses the power to place petitioner on leave, without consultation with the medical board, that power must be implied from his power to remove petitioner after such consultation.
It has been held that the power to suspend a public official is not to be implied from the power to remove him unless ‘ ‘ such *258 an inference, arising from, the general scope and nature of the act granting the power, would be so strong as to compel recognition ”, (Gregory v. Mayor of City of N. Y., 113 N. Y. 416, 420-421.) In the opinion of the court, no such inference is compelled here. To hold otherwise would, of course, be to authorize respondent to prevent petitioner from performing his duties for an indefinite period without even attempting to secure the counsel of others- — a power not conferred by section 585, and not clearly inferable. (Teplitsky v. City of New York, 133 N. Y. S. 2d 260, 261, supra.)
Eespondent’s order in the form of a letter dated February 11, 1964, placing the medical board “on a temporary leave of absence”, directing that its members “otherwise * * * carry on with their regular duties ” and announcing his intention to designate “ A small group of physicians * * * as the Temporary Medical Board ”, is also without support in law.
Subdivision a of section 585 provides that the medical board shall be appointed by the medical staff “ subject to such general rules as the commissioner may prescribe Pursuant to the general rules hereinbefore quoted, certain described members of the medical staff are “automatically” members of the medical board. Eespondent’s position that despite subdivision a and the said general rules he is empowered to suspend a board and appoint an entirely new board when “in his judgment” its exercise “would advance the administration of the city-owned medical institutions ’ ’ is untenable. Eespondent is bound by the provisions of the New York City Charter and cannot avoid the operation of his own rules. (Cf. People ex rel. Doscher v. Sisson, 222 N. Y. 387, 394; People ex rel. Jordan v. Martin, 152 N. Y. 311, 316; Matter of Public Porters Assn. v. O’Connell, 8 Misc 2d 1001, 1003.) If the charter or rules authorized respondent to designate the members of the- board, he might then possess the power to replace them. (Cf. Matter of Kreppein v. Downs, 272 App. Div. 452.)
Eespondent contends, finally, that since the charter does not require a formal hearing prior to the removal of any member of the hospital staff, judicial review of his actions — which are administrative in nature — is unauthorized. He apparently concedes, however, that his action may be annulled if petitioner demonstrates “ the illegality or arbitrariness of [his] * •* * determination to grant him a leave and to suspend the Medical Board ”. (Cf. People ex rel. Kennedy v. Brady, 166 N. Y. 44, 47-48 and People ex rel. Keech v. Thompson, 94 N. Y. 451, 462, 466-467 [cited in Matter of Hecht v. Monaghan, 307 N. Y. 461, 468]; Matter of Croft v. McGinnis, 24 Misc 2d 235, 236; *259 Matter of Edell v. Municipal Broadcasting System, 9 Misc 2d 220, 221.) Such a demonstration has been made.
Respondent urges that the use. of affiliation contracts for restaffing nonaffiliated hospitals where possible is a stated and adopted policy of the Department of Hospitals, which recognizes that patient care, physician training and research are essential interacting ingredients of modern medical care, and that some 16 large and prominent hospitals under this policy have been contractually arranged or have been committed under said affiliation policy; and that the new series of contractual affiliations have made an exciting impact on hospital care and its future within the city, and has attracted national and international interest as an approach to how the public and private sectors can work together for the benefit of both.
He further urges that larger attending staff of well-qualified specialists are being recruited, often receiving faculty appointments in medical schools; that shaky training programs are being strengthened and merged into one joint program with the new affiliates; that more resident physicians are being recruited and rotated between the institutions newly affiliated, thus enriching their training; that modern scientific equipment is being purchased in substantial amounts to update the institutions; and that, what is more important, more patients are being taken care of, particularly in clinics, and that the quality of inpatient care has also improved in hospitals which previously were in serious trouble.
The provisions of the City Charter authorize the respondent Avith the approval of the Board of Estimate to enter into contractual affiliation with any university, medical school or nonprofit hospital (City Charter, § 585).
While a strong argument for affiliation is hereby presented, the propriety of contractual affiliation is not in issue in this proceeding, and the determination of the legality thereof must be left to another forum in which a taxpayer’s action is presently pending to test the legality of contractual affiliation.
Respondent urges that to carry out the vital and enormous responsibilities outlined in the City Charter, the Legislature conferred broad powers upon the Department of Hospitals and its Commissioner, and since it was his obligation to implement the policy adopted to effect contractual affiliation, by placing petitioner on temporary leave and suspending the medical board because of their opposition thereto, he acted within the scope of the discretion implicit in the broad powers the Legislature had vested him with.
*260 In view of the expressed provisions of the City Charter, hereinabove referred to requiring respondent to consult with the medical board before taking the action that he did and the absence of express authority to suspend the medical board, the foregoing position urged by the respondent here is without merit.
Respondent’s argument that consultation with the medical board was only for advisory purposes, and that in view of said board’s opposition to the proposed affiliation of City Hospital Center at Elmhurst with Mount Sinai Hospital, it would have been an idle gesture to consult with the medical board, is both tenuous and specious, and also was not justification for suspending the medical board.
In the light of all the provisions of the City Charter herein-above quoted and referred to, this court is of the opinion that the respondent’s action herein was in direct contravention of the provisions of the Charter and that he did not possess discretionary power to justify the action he took with respect to the petitioner and the medical board.
Accordingly petitioner’s application is granted and the respondent’s orders are annulled.