## No. 27289

**The Park Hospital District, and Edward R. Green, Benjamin F. Stearn, Robert E. Bemiss, Louis Canaiy, Jr., and Dorothea Mutchler, Directors Thereof v. The District Court of the Eighth Judicial District in the County of Larimer, and The Honorable John-David Sullivan, one of the Judges Thereof**

(555 P.2d 984)

Decided November 1, 1976.

Joseph P. Jenkins, P.C., for petitioner.

Harden, Napheys, Schmidt and Bloom, P.C., Charles S. Bloom; Hammond and Chilson, John H. Chilson, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an original proceeding initiated July 13, 1976, by The Park Hospital District and its Board of Directors (hospital) to prohibit the District Court of the 8th Judicial District and the Honorable John-David Sullivan, one of the judges thereof (the court), from proceeding in civil action NO. 29346 in the District Court of Larimer County. We issued a rule to show cause and stayed the proceedings in the trial court. We now discharge the rule.

The action was basically a certiorari proceeding under C.R.C.P. 106(a)(4) brought by Dr. Gruys against the petitioners in response to the action of the Board summarily expelling him from the hospital medical staff. The petition alleged that the Board had abused its discretion and exceeded its jurisdiction. Dr. Gruys also filed a motion for a temporary restraining order and preliminary injunction.

The hospital orally moved to dismiss the action, which motion was denied by the court on June 11, 1976. At the same time the court denied Dr. Gruys' motion for a temporary restraining order and set a hearing on the temporary injunction for July 21, 1976. Subsequently, the hospital filed a written motion to dismiss civil action No. 29346 on June 24, 1976, which motion was set for a hearing on July 7 and continued to July 9, 1976. On July 9 the court denied the petitioner's motion to dismiss the action and

denied the hospital's motion to vacate the hearing on the preliminary injunction. The court also issued an order under Rule 106 directing the hospital to certify a transcript of its proceedings on or before the hearing on the injunction set for July 21 and ordered the hospital to show cause why it should not be required to reinstate Dr. Gruys to full privileges.

On July 13 this court issued its rule to show cause and stayed further proceedings in response to the petition for relief in the nature of prohibition.

■ The question is whether the trial court has jurisdiction to determine the issue presented by the certiorari petition. The hospital contends that it should not be required to respond to the trial court's show cause order because Dr. Gruys had not exhausted his administrative remedies in accordance with the hospital by-laws before he filed suit.

There are several by-laws of the hospital district as well as by-laws, rules and regulations of the medical staff which are applicable to the issue. The hospital relies on Article XI, Section 2(a) of the staff by-laws, which reads:

"a. *Notice of Decision.* In all cases in which the board or committee which, under these bylaws has the authority to, and pursuant to this authority, has taken any of the actions constituting grounds for hearing as hereinafter set forth in subsection b of section 2 of this procedure, the applicant or medical staff member, as the case may be, shall promptly be given notice. Such applicant or member shall have 7 days following the date of the receipt of such notice within which to request a hearing by the judicial review committee hereinafter referred to. Said request shall be by notice to the chief executive officer. In the event the applicant member does not request a hearing within the time and in the manner hereinafter set forth, he shall be deemed to have accepted the action involved and it shall thereupon become effective immediately."

The hospital has offered Dr. Gruys the benefit of this section on several occasions since expelling him.

In the respondents' brief in opposition to the petition for relief in the nature of prohibition it is asserted that Dr. Gruys has never been offered an opportunity to take full advantage of the rights offered in the by-laws of "the Board and/or the medical staff;" and that he "has requested these rights and has been denied them."

Our attention has been specifically directed to Article VII, Section 1 of the district by-laws, which reads:

"(a) The Board of Directors of the Elizabeth Knutsson Memorial Hospital shall organize those physicians granted practice privileges in the Hospital into Medical Staff. Each member of the Medical Staff shall have an appropriate authority and responsibility for the care of his patients, subject to such limitations as are contained in these By-Laws, and in the By-Laws, rules and regulations for the Medical Staff and subject, further, to any

limitations attached to his appointment.

. . . .

"(c) All appointments to the Medical Staff shall be *for one year only, renewable by the Board of Directors of the Elizabeth Knutsson Memorial Hospital without formal reapplication.* When an appointment is not to be renewed, or when privileges have been, or are proposed to be reduced, suspended, or terminated, *the staff member shall be afforded the opportunity of a hearing in accordance with their procedures as outlined in the Medical Staff By-Laws of the Elizabeth Knutsson Memorial Hospital. Such hearings shall be conducted so as to assure due process and afford full opportunity for the presentation of all pertinent information.*
"Section 2. *Medical Care and Its Evaluation*:

. . . .

"(b) The Medical Staff shall conduct a continuing review and appraisal of the quality of the professional care rendered in the Hospital, and shall report such activities and their results to the Board of Directors of the Elizabeth Knutsson Memorial Hospital."
(Emphasis added.) Section 2(c), *inter alia*, provides that the medical staff shall make recommendations to the hospital board concerning *alterations of staff status, and disciplinary action.*

Article IX of the staff by-laws provides that corrective action shall be taken *whenever the activities or professional conduct of any staff member are considered to be lower than the standards of the medical staff, or be disruptive to the operation of the hospital.*

Conduct of Dr. Gruys which fits the discription of the language in the preceding paragraph appears to have been the basis of the complaints against him. Article IX provides that a request for corrective action may be made by an officer of the medical staff, or by the Chairman of any standing committee, by the hospital administrator, or by the governing body (the board). It further provides that all requests shall be in writing, addressed to the executive committee of the medical staff, and supported by reference to the specific activities or conduct which constitutes the grounds for the request. The record is devoid of any evidence of compliance with the written complaint portion of Article IX.

The remaining provisions of Article IX are pertinent to the resolution of the issue and are quoted in toto:
"Whenever the corrective action could be a reduction or a suspension of clinical privileges, the executive committee shall forthwith request the governing body to appoint an ad hoc committee to investigate the matter. The governing body shall appoint three members of the active medical staff, or one member of the active medical staff and two non-members thereof, or three practitioners, all of whom are non-members of the active medical staff to conduct such investigation. Within 10 days the ad hoc committee

shall report to the executive committee its findings. Prior to making the report the practitioner against whom corrective action has been requested shall have an opportunity for an interview with the ad hoc investigating committee. He shall be informed of the general nature of the charges against him and shall be invited to duscuss, explain or refute them. This interview shall not constitute a hearing, shall be preliminary in nature and none of the procedural rules provided in the bylaws with respect to hearings shall apply thereto. A report of such interview shall be included with the report to the executive committee. Within ten days following receipt of the report of the ad hoc committee the executive committee shall make a decision. Prior to action by the executive committee, the practitioner shall be permitted to make an appearance before the executive committee.

"The action of the executive committee may be to reject or modify the request for corrective action, to issue a warning, a letter of admonition, or a letter of reprimand, to impose terms of probation or a requirement for consultation, to recommend reduction, suspension or revocation of clinical privileges, to recommend that an already imposed suspension of clinical privileges be terminated, modified, or sustained, or to recommend that the practitioner's staff membership be suspended or revoked.

"Any recommendation by the executive committee for reduction, suspension, or revocation of clinical privileges, or for suspension or expulsion from the medical staff, shall entitle the affected practitioner to the procedural rights provided for under the Hearing and Appeal Procedures.

"The president of the staff shall promptly notify the administrator of all requests for corrective action received by the executive committee and shall continue to keep the administrator fully informed of all action taken in connection therewith."

The whole tenor of the hospital district's by-laws is to afford interviews, consultations and hearings to those staff members who fail or appear to fail to meet their duties and responsibilities. Article VII, Section 1(a), *supra.* When privileges are proposed to be reduced, suspended or *terminated* the staff member shall be afforded the opportunity of a hearing in accordance with the "procedures outlined in the Medical Staff By-Laws." It is quickly apparent that the medical staff by-laws, rules and regulations control situations similar to the one before us. It is also obvious that the district by-laws contemplate that proceedings to discipline and terminate medical staff members are to be conducted by the medical staff members and committees and not by the board of the hospital. Article VII, Section 1(c), *supra.*

A careful reading of the medical staff rules indicates adherence to the requirement in the hospital's by-laws that the hearings provided for "shall be conducted so as to assure due process and afford full opportunity for the presentation of all pertinent information". Article VII, Section 1(c), *supra.*

The medical staff by-laws provide that whenever the proposed corrective action *could be a reduction or a suspension of clinical privileges,* the executive committee shall forthwith request the governing body to appoint an ad hoc committee to investigate the matter. The record discloses a failure to follow this procedure. It does show however that the Chief of Staff (Dr. Beckford), who is also chairman of the executive committee, together with other members of the executive committee, met with Dr. Gruys in December, 1975, to discuss some of the grievances which formed the basis of the "emergency" upon which the June 9, 1976, expulsion was based.

The executive committee failed to take the threshhold action indicated above, as well as the other procedures provided for in the quoted portion of Article IX of the staff by-laws. Until these procedures are followed there can be no formal recommendation by the executive committee to the governing board, nor can Dr. Gruys use the procedural rights provided for in Article XI.

We find it necessary to interpret Article XI, Section 2 of the medical staff by-laws in light of Article VII, Section 1(c) of the district's by-laws that "such hearings shall be conducted so as to assure due process and afford full opportunity for the presentation of all pertinent information." It is clear from such an interpretation that after the ad hoc committee has concluded its investigative interview and made its report to the executive committee, and the executive committee has made its recommendation to the board, the medical staff member shall be promptly given notice. He then has seven days following receipt of the notice within which to request a hearing by the judicial review committee, which is appointed by the executive committee upon receipt of a request for a hearing. If the charged staff member fails to request the hearing, the recommendation of the executive committee becomes effective upon the expiration of the 7 day period.

Subsection c provides for the procedure by the executive committee to schedule and arrange for the hearing before the judicial review committee. The judicial review committee is required to render a decision and make a written report to, among others, the governing board. Subsection h. It is readily apparent that the rules provide procedures for a hearing and further appeals.

It thus becomes clear that the board wholly ignored its own by-laws as well as the procedures set forth in the by-laws of the medical staff. By its summary expulsion of Dr. Gruys it foreclosed any further resort to its own procedures. The expulsion was a final order.

■ Fundamental fairness requires that the district follow its own rules when it deprives a physician of his rights as a member of its medical staff. *McArthur v. Zabka,* 177 Colo. 337, 494 P.2d 89 (1972), *Tuchman v. Trussell,* 43 Misc. 2d 255, 250 N.Y.S.2d 913 (Sup.Ct. 1964); *Jacobs v. Martin,* 20 N.J.Super. 531, 90 A.2d 151 (1952).

■ We recognize that emergencies may occur where summary action would be justified. Certainly, if the ground for suspending or expelling a staff doctor were one relating to the safety of patients, the appropriate hospital authorities could suspend his privileges pending the outcome of investigative and hearing procedures calculated to provide him due process. Here, however, patient safety was not involved. *Colorado State Board of Medical Examiners v. District Court*, 191 Colo. 158, 551 P.2d 194 (1976). Moreover, the mere recitation that an emergency exists does not create one. As indicated earlier in this opinion the complaints regarding Dr. Gruys' conduct upon which the expulsion was predicated apparently extended back to December, 1975. Here the procedures adopted by the district provided adequate due process protection and should have been followed.

The rule is discharged and the matter is remanded to the district court.

MR. JUSTICE ERICKSON concurs in the result only.