**Albert DWORKIN, M.D., Plaintiff,**

v.

**ST. FRANCIS HOSPITAL, INC., Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: May 27, 1986.
Decided: Oct. 3, 1986.

Walter L. Pepperman, II, and Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Victor F. Battaglia, Pamela S. Tikellis of Biggs & Battaglia, Wilmington, for defendant.

O'HARA, Judge.

Plaintiff comes before the Court by way of a motion to compel discovery of evidence allegedly protected by privilege. For the reasons stated herein, plaintiff's motion is hereby granted in part.

The controversy underlying the present motion concerns two decisions made by the Executive Committee of defendant St. Francis Hospital ("SFH") on May 13 and June 3, 1982, to first limit, and then terminate, the medical privileges of plaintiff Dr. Albert Dworkin.[1] Specifically, plaintiff seeks compensatory damages, alleging that the Committee's decisions were made without adequate care, wrongfully, and in violation of SFH's Bylaws of the Medical and Dental Staff ("Bylaws"). Plaintiff's motion relates to information he attempted to elicit at the deposition of Dr. William H. Duncan, SFH's Vice President for Medical Affairs. On the advice of his attorney, Dr. Duncan declined to answer several questions on the ground that the responses would require him to reveal information protected under 24 *Del.C.* § 1768, a statute affording confidentiality to, among others, persons reviewing physician's work. Plaintiff argues that the privilege does not apply under the circumstances of this case and, in the alternative, that the information sought falls outside the scope of the statute. Plaintiff also seeks costs in prosecuting this motion.

Section 1768 operates to protect the existence of peer review groups within the medical profession by extending to such groups two distinct types of immunity. Section 1768(a) insulates individual group

---

1. Dr. Dworkin's medical privileges at SFH were reinstated in September, 1982.

members from liability arising from their decisions so long as the members act in good faith and in accordance with the duly adopted rules governing the group's conduct.[2] Section 1768(b) directs that the records and proceedings of such groups shall be confidential and unavailable for court subpoena or discovery.[3] In addition, the statute indicates that persons attending group meetings shall not be required to testify as to the business conducted at such meetings. These protections are consistent with the Legislature's goal of creating an environment for the establishment and enforcement of professional standards. *Danklef v. Wilmington Medical Center*, Del.Super., 429 A.2d 509, 513 (1981).

## I.

In support of his motion plaintiff first contends that the statute is inapplicable on the present facts because the hospital's Executive Committee did not act in good faith when it decided to limit, and then terminate, his privileges at SFH. Specifically, plaintiff argues that the Committee rendered its decision based on the erroneous assumption that plaintiff's privileges at

the Wilmington Medical Center ("WMC") had been diminished. Plaintiff points to a letter he received from SFH President Richard A. Long, dated September 9, 1982, which concedes that his WMC privileges had not, in fact, been diminished to support his contention that the Committee acted in bad faith.

■ The good faith requirement of § 1768 serves to protect the medical practitioner from decisions affecting his professional status which are not appropriately grounded in matters of medical competence. The statute achieves this result by removing the protective insulation of the immunities, thereby subjecting the Committee's decision to scrutiny, where there is evidence of bad faith on the part of Committee members in reaching their decision. With an understanding of the important role served by the immunities, the Legislature provided that good faith is presumed, and that in order to remove a Committee act from the protection of the statute the complainant must show malice. *See* § 1768(a).

■ After reviewing the documentation in this case, the Court holds that plaintiff

2. Section 1768(a) provides:

The Board of Medical Practice, the Medical Society of Delaware, their members, or the members of any committees appointed thereby, and members of hospital and osteopathic medical society committees, or of a professional standards review organization established under federal law (or other peer review committee or organization), whose function is the review of medical records, medical care and physicians' work, with a view to the quality of care and utilization of hospital or nursing home facilities, home visits and office visits, shall not be subject to, and shall be immune from, claim, suit, liability, damages or any other recourse, civil or criminal, arising from any act or proceeding, decision or determination undertaken or performed or recommendation made so long as such member acted in good faith and without malice in carrying out the responsibilities, authority, duties, powers and privileges of the offices conferred by law upon them under this chapter (excluding only subchapter VI of this chapter) or any other provisions of the Delaware law, federal law or regulations, or duly adopted rules and regulations of the afore-

mentioned committees, organizations and hospitals, good faith being presumed until proven otherwise, with malice required to be shown by the complainant.

3. Section 1768(b) provides:

The records and proceedings of any such committees or organizations as described in subsection (a) of this section shall be confidential and shall be used by such committees or organizations and the members thereof only in the exercise of the proper functions of the committee or organization and shall not be public records and shall not be available for court subpoena or subject to discovery; and no person in attendance at a meeting of any such committee or organization shall be required to testify as to what transpired thereat. No physician, hospital, organization or institution furnishing information, data, reports or records to any such committee or organization with respect to any patient examined or treated by such physician or confined in such hospital or institution shall, by reason of furnishing such information, be liable in damages to any person or subject to any other recourse, civil or criminal.

has not sustained his burden of proving bad faith or malice. The voluminous correspondence between plaintiff and various SFH officials suggests that at the time the Executive Committee made its decisions there was some question as to whether plaintiff's privileges at WMC were in fact diminished. The decisions were based on a belief that if plaintiff's privileges at WMC were properly limited, action was necessary to similarly limit his privileges at SFH in order to protect patients. There is no evidence in the record demonstrating that at the time SFH's Executive Committee decided to take action against the plaintiff it was motivated by a purpose other than the protection of its patients. Accordingly the Court cannot agree that the privilege is inapplicable for violation of the good faith requirement.

## II.

Plaintiff next argues that the privilege does not apply insofar as the Committee's actions derogated from, and were contrary to, its bylaws. The parties do not dispute that the Committee measures in first limiting, and then terminating, plaintiff's privileges at the hospital were taken pursuant to Article III, § 7 of the Bylaws. The operative language of the provision here at issue states that:

> Any one of the following—the chairman of the Executive Committee, the president of the medical staff, the director of a department, the chief executive officer and the executive committee of either the medical staff or the Governing Body— shall each have the authority whenever action must be taken immediately in the best interest of patient care in the hospital to summarily suspend all or any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition. Whenever the chief executive officer takes such action, as soon as

possible thereafter he shall consult with one of the above members of the medical staff.

This procedure permits the above mentioned officials to suspend privileges expeditiously and in a manner that does not afford the affected physician notice or an opportunity to be heard prior to the action.[4]

Plaintiff's arguments here are twofold. First, plaintiff contends that the conditions triggering the use of the summary suspension procedure—"whenever action must be taken immediately in the best interest of patient care in the hospital"—were not present and that the Committee actions taken pursuant to this provision were therefore improper. Second, plaintiff contends that the hospital's decision to *terminate* his privileges was invalid insofar as the bylaw at issue permits only summary suspensions.

Courts have traditionally recognized a need to defer to the expertise of administrators in matters concerning the conduct of hospital affairs. The importance of the services provided and the highly specialized and complex nature of the decisions daily made have prompted courts to assume a limited role when reviewing hospital decisions. The Supreme Court of New Jersey has characterized the tension between physician and hospital in the following terms:

> Counterbalancing the needs of the physician ... are those of the hospital. It has a primary interest in maintaining the quality of patient care it affords to those in need. It is sometimes the difficult task of those who administer hospitals to weigh the relative merits of these two vital and sometimes competing considerations. At times the wisdom of the determination may be challenged. On such occasions a reviewing court should confine its effort to determining whether the decision made by the hospital is sup-

---

4. Article III, section 7 is an exception to the general rule contained in the Bylaws that requires notice and an opportunity to be heard prior to the acceptance by the Governing Body of any recommendation made by the Executive Committee having an adverse impact on a physician's appointment to, or status within, the medical staff.

ported by credible evidence and is neither arbitrary nor capricious. When a decision fulfills these requirements, a reviewing court should refrain from substituting its own judgment for that of the hospital authorities.

*Guerrero v. Burlington County Memorial Hospital,* N.J.Supr., 70 N.J. 344, 360 A.2d 334, 340 (1976), *modified, Garrow v. Elizabeth General Hospital,* N.J.Supr., 79 N.J. 549, 401 A.2d 533 (1979). This Court believes that similar deference should be afforded individuals charged with the responsibility of reviewing the quality of medical care provided within the hospital. As a result the Court must approach challenges to the discretion of such individuals with caution.

■ In light of these principles, plaintiff's arguments in support of his contention that the summary suspension provision was not properly triggered are insufficient to convince this Court that judicial second guessing is necessary. Plaintiff posits that no patients were admitted at SFH on his behalf at the time of the Committee action and that the Committee's three week delay in communicating the decision to limit his privileges is inconsistent with a need for "immediate action." SFH explains its reliance on the summary suspension provision by pointing out the perceived dangers in permitting plaintiff to continue his association with the hospital with unlimited privileges in light of a determination by another hospital that his privileges there should be restricted. SFH suggests that the fact that plaintiff had no patients currently admitted would not prevent him from exercising his privileges on an emer-

gency basis. SFH adds that bureaucratic problems prevented earlier notification to plaintiff.

On these facts the Court finds that the Committee's decision to use the summary suspension procedure was neither arbitrary nor capricious. The decision to proceed under the provision appears to have been grounded in a concern for patient safety. In addition, while a three week delay in communicating the Committee's decision appears inconsistent with its desire to bring about an immediate result, the Court cannot say that such a delay comments on the propriety of the decision to proceed under that particular provision in the Bylaws. Therefore, the Court will not declare that the privilege was blanketly inapplicable for inappropriately proceeding under this provision.

■ A different result is reached, however, with respect to plaintiff's contention that the Committee acted improperly when it *terminated* his privileges under the summary suspension provision. Plaintiff correctly points out that the provision applies only to suspension and does not authorize the hospital to *terminate* a physician's privileges without affording the notice and opportunity to be heard required elsewhere by the Bylaws. While deference must be given to the discretionary decisions made by medical professionals, hospital bylaws should not be so liberally construed as to permit actions inconsistent with their express language.[5] Accordingly the Executive Committee's act of *terminating* plaintiff's privileges under the summary suspension provision of its Bylaws was improper. Under § 1768 such an act

---

**5.** *See, e.g., Diamond v. Samaritan Health Service,* Ariz.App., 27 Ariz.App. 682, 558 P.2d 710, 712 (1976) (private hospital must follow its own rules and regulations or be subject to judicial intervention); *Storrs v. Lutheran Hospitals and Homes Society of America, Inc.,* Alaska Supr., 609 P.2d 24, 30 (1980) (in suspending physician privileges a hospital must conform to its bylaws); *Park Hospital District v. District Court,* Colo.Supr., 192 Colo. 69, 555 P.2d 984, 988 (1976) (fundamental fairness requires that district follow its own rules when depriving physi-

cian of rights as member of medical staff); *Spencer v. Community Hospital of Evanston,* Ill. App., 87 Ill.App.3d 214, 42 Ill.Dec. 272, 275, 408 N.E.2d 981, 984 (1980) (where physician's existing staff privileges are revoked or reduced, private hospital must follow its bylaws or be subject to limited judicial review); *Miller v. Indiana Hospital,* Pa.Super., 277 Pa.Super. 370, 419 A.2d 1191, 1193 (1980) (staff bylaws constitute terms of legally binding contract between hospital and doctors; hospital will be held to strict compliance).

is not protected by the statutory immunities. Therefore, plaintiff is entitled to full disclosure of the facts and circumstances surrounding the Committee's decision to *terminate* his privileges at SFH insofar as such disclosure does not impinge on any other privilege recognized under our laws.

### III.

The remaining information sought by plaintiff, relating to the Committee's decision to *limit* his privileges at SFH, must be evaluated under plaintiff's contention that the information he seeks is outside the scope of the privilege created by the statute.

The scope of § 1768 was explored previously by this Court in *Connolly v. Labowitz*, Del.Super., No. 83C–AU–1, Bifferato, J. (Dec. 17, 1984). In ruling on a motion to compel discovery in a malicious defamation and contract interference action between two physicians, the Court prefaced its interpretation of the statute by noting that "[p]rivileges are repugnant to the adversarial judicial system in the United States and are therefore narrowly construed." *Id.* (citing 81 Am.Jur.2d *Witnesses* § 141). The Court continued that the statute expressly protects only records, proceedings, and testimony before medical review committees. With regard to records, the Court explained that:

> Records include any paperwork, reports or compilation of data which are used exclusively by the committee.... The discoverer, in order to effect discovery, must show the records were used by or published to persons outside the specific review organization.... The waiver of privilege by publication does not affect the immunity of the committee members; only the discoverability of the documents is affected.

*Connolly*, slip. op. at 2–3. On the subject of testimony, the Court indicated that:

> Testimony given at a committee hearing is also privileged. This is to promote open and honest discussion of the credentials and capabilities of medical personnel. All testimony before the committee is privileged. An examiner cannot ask a witness who testified at the committee to relate the sum and substance of his testimony before the committee; however, he can be questioned regarding the events about which he testified before the committee. Only the actual testimony before the committee is shrouded with the cloak of immunity and privilege; not the events to which the testimony relates.

*Id.* at 3.

■ *Connolly* makes clear the fact that the scope of the privilege is not unlimited. Rather, the protective immunity extends to such information as is necessary to further the Legislature's purpose in enacting the statute. That purpose—to prevent the chilling effect caused by the prospect of public disclosure of statements made to, or information prepared for and used by, medical review committees in the accomplishment of their assigned tasks—does not include insulating the decisions of such committees from outside scrutiny. Scrutiny is indeed necessary to ensure that the committees act in accordance with their powers and in a manner consistent with principles of fairness. Inquiries dealing with the existence of an investigation, the steps taken to generate evidence from which to render a decision, and the evidence on which such decisions are based provide information that is essential toward this end. Until the Legislature indicates otherwise, the Court will not shield medical review committees from challenges to the appropriateness of their actions.

■ Following the guidelines set forth in *Connolly*, this Court reads the privilege statute to protect records prepared for the exclusive use of the Committee, transcripts of Committee meetings, and testimony actually received by the Committee. In addition, "no person in attendance at a meeting of any such committee or organization shall be required to testify as to what transpired thereat." *See* § 1768(b). All other information is properly discoverable.

### IV.

Plaintiff lastly requests that the Court award his expenses in prosecuting this motion pursuant to Superior Court Rule 37(a)(4). Under the rule, the Court must award such expenses unless it finds "that the opposition to the motion was substantially justified or that other circumstances [make] an award of expenses unjust." The provision is designed to attach a cost to unjustified, frivolous, or unfounded resistance to the discovery process.

The defendant's refusal to provide the information requested in the present case is based on its interpretation of a statutory privilege. The privilege had been narrowly construed by the *Connolly* Court, and the defendant was made aware of this fact. Nonetheless the defendant's advice to Dr. Duncan during the deposition was based on an expansive reading of the statute that would prevent discovery of nearly all facts relating to the Committee's investigation and subsequent decisions. While this Court appreciates the defendant's cautiousness, the Court cannot say that such an expansive reading of the statute was justified under the circumstances. At the same time, the Court acknowledges that it must hesitate before penalizing the exercise of a right granted by the Legislature. Therefore, the Court holds that the parties shall share the costs of prosecuting this motion equally.

### V.

In conclusion, the Court holds that plaintiff's motion to compel discovery shall be granted to the extent consistent with this opinion. Plaintiff is additionally entitled to half of his expenses in prosecuting this motion.

IT IS SO ORDERED.