62 So.2d 415 (1953)
MORRISON et al.
v.
MALMQUIST.
Supreme Court of Florida, Special Division A.
January 13, 1953.
Lindsey & Cargell, St. Petersburg Beach, for appellants.
Mann, Harrison & Stone, St. Petersburg, for appellee.
THOMAS, Justice.
The appellants were dissatisfied with the amount of the judgment entered in their favor, so they appealed.
The defendant admitted responsibility for the collision of two automobiles in one of which the plaintiff-wife was riding, but he denied that the ailments from which she suffered were traceable to his negligence. To support the position he introduced a physician who had examined her before the mishap and who testified that he then found the same disorders and complaints later attributed by her to the accident.
This testimony was received after the court overruled an objection to it on the ground that the information the doctor had gained was privileged; also after the doctor on his own account had sought the court's advice whether it would be proper for him to relate what he had learned about his patient, and had been assured by the court that there would be no breach of confidence by replying to the questions.
Thus arises the sole question for our determination, i.e., to quote from appellants' brief, "Are Communications of a Patient to a Physician * * * Privileged * * *?"
It is conceded by appellants that until the passage of Chapter 26684, Laws of Florida, Acts of 1951, now Section 458.16, Florida Statutes 1951, F.S.A., such communications were not privileged. Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911.
At the outset we are disposed to express our disagreement with appellants' argument that their position is strengthened by the Hippocratic Oath. This oath, so-called, the creed of ethical physicians, originated more than two thousand years ago, so the span of its existence well covers the period during which the common law was developed and statutes were enacted on the subject of the confidential nature of the intelligence received by physicians from their patients. Anyway, the relevant part of the "oath," which appellant cites, which we quote from Dorland's Medical *416 Dictionary, is an obligation to "keep secret" knowledge "in the exercise of my profession or outside of my profession or in daily commerce with men, which ought not to be spread abroad * * *." (Italics supplied) So the secrets to be kept are not confined to those arising from professional services, and the promise is qualified by the commitment not to give them unseemly circulation. We apprehend that no physician, under the protection of this code, time-honored as it is, and laudable as his determination to respect it might be, could refuse to tell in a court of justice news that had reached him, inside or outside his profession, or from intercourse with his fellow men, himself determine whether he should divulge it, and whether telling it at the command of a court would amount to spreading it abroad.
The charge in the brief that the witness violated this "oath" when he was told to answer the questions about appellant-wife's physical condition prior to the collision is wholly unfounded.
If the "oath" were to be given the construction claimed for it, it would in this very case become an instrument of gross fraud. The jury evidently believed that the appellant-wife was attempting to charge to the appellee ailments from which she suffered before the incident in which appellee played a role. By silencing the doctor the appellee would be required to disgorge for conditions for which he was in no sense responsible. And, such, precisely, would be the effect of our holding that the cited statute had changed the common law.
When this law, entitled "An Act Relating to Furnishing Reports of Mental and Physical Examinations of Persons by Doctors and Other Practitioners of the Healing Sciences", was enacted it was not the purpose of the Legislature to modify or relax the common-law rule with reference to the character of communications between physician and patient. This would not be the conclusion from a liberal, much less strict, construction. In the act, first, is a mandate to furnish copies of all reports upon request of certain persons; then there is the admonition not to furnish "Such" reports to others except upon authorization of the patient. We take it from the context that "copies" was meant in the second instance also. There follows a proviso about "such" reports being furnished without authorization to persons who, with the patient's consent, procured the examination. The reports, or copies of reports, mentioned in the statute do not mean answers to questions posed in a trial and ordered answered by the presiding judge. We cannot construe testimony by a witness as a report.
As a consequence we decide that there is no clean-cut language demonstrating a purpose to amend or modify the common-law rule, so we approve the judge's ruling and affirm the judgment.
Affirmed.
HOBSON, C.J., and TERRELL and SEBRING, JJ., concur.