435 So.2d 262 (1983)
Holly CORALLUZZO, a Minor by and through Her Mother and Next Friend, Anita CORALLUZZO, and Anita Coralluzzo, Individually, Petitioners,
v.
Paul FASS, M.D., Cora Sue Golden, M.D., Physicians Protective Trust Fund, Florida Patient's Compensation Fund, Curtis Meltzer, M.D., Daniel Diana, M.D., Sanford Robbins, M.D., Philip Freedland, M.D., and Arthur Sher, M.D. d/b/a Radiology Associates and Parkway General Hospital, Inc., a Florida Corporation, Respondents.
No. 82-1658.
District Court of Appeal of Florida, Third District.
May 31, 1983.
Rehearing Denied July 25, 1983.
*263 Anderson & Moss and Karen A. Gievers, Miami, for petitioners.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and Todd A. Cowart and James Tribble, Miami, for respondents.
Gerald E. Rosser, Miami, for Florida Defense Lawyers Ass'n as amicus curiae.
Colson, Hicks & Eidson and Mary Friedman, Miami, for Dade County Trial Lawyers Ass'n as amicus curiae.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

Hearing En Banc
PER CURIAM.
Petitioners seek a Writ of Certiorari to quash an order allowing respondents, defendants in the trial court, to participate in ex-parte conferences with petitioners' health care provider.
Petitioners filed a medical malpractice action against various health care providers. The attorney for certain of the defendants arranged to meet ex-parte with petitioners' treating physician to discuss petitioners' case. Petitioners were first granted a protective order, then the trial court vacated the order, finding that, although health care providers have a fiduciary duty to not reveal a patient's confidence, particularly, as here, when expressly instructed not to, it was bound by Frantz v. Golebiewski, 407 So.2d 283 (Fla. 3d DCA 1981), that health care providers are ordinary, not expert witnesses, and thus not contemplated by Fla.R. Civ.P. 1.280(b)(3).
We agree with the trial court and after hearing, deny the request for a Writ of Certiorari on authority of Frantz v. Golebiewski, supra.[1]
JORGENSON, Judge, dissenting.
Because I firmly believe that treating physicians are extra ordinary witnesses in medical malpractice cases, I must respectfully dissent.
The policy implications of permitting treating physicians to meet and discuss ex parte a patient's case with defense counsel, without notice and without the presence of *264 the plaintiff's counsel, are too vast to allow unsupervised discovery by relying merely upon a strained construction of rules of civil procedure, see Frantz v. Golebiewski, 407 So.2d 283, 285 (Fla. 3d DCA 1981). I would therefore recede from Frantz or in the alternative limit that case to its facts and hold that there exists in physicians an explicit duty not to discuss a patient's case with others.
As the majority recognizes, physicians have a fiduciary duty not to reveal a patient's confidences. The majority's decision authorizes a breach of that duty and, thus, necessarily sanctions trauma to the physician-patient relationship, the very harm the law ought to prevent.[1] This case does not concern the physician-patient testimonial privilege, a privilege which has never been recognized in Florida, see Morrison v. Malmquist, 62 So.2d 415 (Fla. 1953). The significance of this case is the unique fiduciary and confidential relationship between physician and patient, a relationship which imposes a duty on the physician not to disclose to third parties confidential information concerning his patient when not compelled to by law, see Nardone v. Reynolds, 333 So.2d 25, 39 (Fla. 1976); Morrison, 62 So.2d at 416.[2]
To the extent that we can we should nurture, not destroy, this legally recognized relationship. If Holly Coralluzzo is in fact a victim of medical malpractice, we should not add legal salt to the existing wound by approving, over Holly's objection, her current treating physician's ex parte meeting (for purposes patently not in furtherance of her treatment) with the very person who caused her injury. Such a meeting hardly enhances the physician-patient relationship. Indeed, in dealing with a similar case the Superior Court of Pennsylvania stated:
We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezickson's role in inducing Dr. Murtagh's breach of his confidential relationship to his own patient is to be and is condemned.
Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 146 (Pa. Super. Ct. 1962) (emphasis added). See also Hammonds v. Aetna Casualty & Surety Co., 243 F. Supp. 793 (N.D. Ohio 1965) (distinguishing testimonial privilege and holding that a patient's protagonist may not engage in unsupervised conversations with the treating physician, that the mere waiver of a testimonial privilege does not release the doctor from his duty of secrecy and loyalty and that no one may be permitted to induce a breach of these duties); Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973) (holding that a medical doctor is under a general duty not to make extra-judicial disclosures of information acquired in the course of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action).
Louisell and Williams, in their medical malpractice manual, reach the heart of a second policy consideration:
[W]here there is no clear statute or rule permitting otherwise, defense counsel should confer with non-party physicians *265 who treated plaintiff only with the knowledge and consent of the plaintiff and counsel. Not only is that the fair way, but it avoids any implication of collusion or conspiracy which may appear from clandestine consultations. To the same end, plaintiff's counsel should cooperate in voluntarily facilitating this aspect of the defense attorney's job.
1 D. Louisell & H. Williams, Medical Malpractice ¶ 12.05 (1982) (emphasis added); see also Fla.Bar Code Prof.Resp., Canon 9 (a lawyer should avoid even the appearance of professional impropriety); Wenninger v. Muesing, 307 Minn. 405, 240 N.W.2d 333 (1976) (private non-adversary interviews with patient's attending physician are not contemplated under rules of discovery).
Recognizing the existence of a fiduciary duty not to disclose patient confidences will do the defendant in this case no harm because the treating physician previously deposed can be deposed again upon a proper showing, see Fla.R.Civ.P. 1.280(b)(3), 1.310.
For the foregoing reasons I would grant certiorari in this case, and remand to the trial court with directions to enter a protective order.
DANIEL S. PEARSON and FERGUSON, JJ., concur in the dissent of JORGENSON, J.
DANIEL S. PEARSON, Judge, dissenting.
"In law ... the right answer usually depends on putting the right question." Rogers v. Helvering, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134, 137 (1943). The question put by Frantz in Frantz v. Golebiewski, 407 So.2d 283 (Fla. 3d DCA 1981), was whether the treating physician, there, one Rubelman, whose information concerning the plaintiff was definitively not acquired or developed in anticipation of litigation or trial, was an expert within the contemplation of Florida Rule of Civil Procedure 1.280(b)(3). Carol Golebiewski, the plaintiff, accepted this as the right question. She is, accordingly, bound by the right answer  a treating physician is not an expert within the contemplation of the rule. Significantly, Golebiewski, independent of the rule, never urged the impropriety  indeed, conceded the propriety, id. at 284  of Rubelman extrajudicially[3] speaking about his treatment of her with Frantz's attorneys.[4]
Holly Coralluzzo, the plaintiff in the present action, puts a different question. It is irrelevant to her that her treating physician, Dr. Magnacca, is not an expert under the rule. Her question is whether Dr. Magnacca can be precluded from extrajudicially discussing his treatment of her with respondent's attorneys, a discussion which she, unlike the plaintiff in Frantz v. Golebiewski, contends is improper for reasons having nothing to do with the expert witness rule. That being the question, I think the right answer is that Dr. Magnacca can be precluded from such an extrajudicial discussion.
Whether or not there is a confidential relationship between a physician and patient, which creates a duty on the physician not to disclose extrajudicially information obtained from the patient in the course of treatment, is a question of first impression in this state.[5] Decisions of Florida courts *266 holding that a physician may be legally compelled to divulge information about his patient, and, therefore, in that discrete sense, such information is not privileged, see, e.g., Morrison v. Malmquist, 62 So.2d 415 (Fla. 1953); Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911 (1938); Fidelity and Casualty Co. of New York v. Lopez, 375 So.2d 59 (Fla. 4th DCA 1979), are plainly not authority for the proposition that a physician not under such legal compulsion may disclose information concerning his patient. The reason is apparent. The public interest in preventing the concealment of the true facts of a controversy, see Morrison v. Malmquist, 62 So.2d at 416, is fully satisfied by compelling disclosure in judicial proceedings. But no public interest whatsoever is served by allowing physicians free rein to discuss their patient's confidences.
Quite obviously, it is the majority's failure to recognize the distinction between voluntary and compelled disclosure that has led it to its result. Yet the distinction is one which existed at common law. Although it was said at common law that no physician-patient privilege existed, what was meant was simply that disclosure can be compelled by a court. Thus, in the words of Chief Justice Lord Mansfield:
"If a surgeon was voluntarily to reveal these secrets, to be sure he would be guilty of a breach of honor and of great indiscretion; but to give that information in a court of justice, which by the law of the land he is bound to do, will never be imputed to him as any indiscretion whatever." Duchess of Kingston's Trial, 20 How.St.Trials 573 (1776).
As I have said, no Florida court has yet answered the question put by Holly Coralluzzo. However, other jurisdictions in which, like Florida, there exists no physician-patient privilege have had occasion to address the precise problem.[6] In each of these cases, the courts have recognized that although no privilege exists which would prevent disclosure in judicial proceedings, whether uncompelled and extrajudicial disclosure can be prevented presents a distinct and separate question with a totally different answer.
Thus, in Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 143 (1962), where the physician in question conferred privately with his patient's adversary, the court said:
"We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is extracted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezickson's role in inducing Mr. Murtagh's breach of his confidential relationship to his own patient is to be and is condemned." 177 A.2d at 146.
The Supreme Court of New Jersey in Hague v. Williams, 37 N.J. 328, 181 A.2d 345 (1962), found like conduct equally reprehensible:

*267 "However, the same philosophy does not apply with equal rigor to non-testimonial disclosure. The above ethical concepts, although propounded by the medical profession under its own code, are as well expressive of the inherent legal obligation which a physician owes to his patient. The benefits which inure to the relationship of physician-patient from the denial to a physician of any right to promiscuously disclose such information are self-evident. On the other hand, it is impossible to conceive of any countervailing benefits which would arise by according a physician the right to gossip about a patient's health.
"A patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts may become public property. Only thus can the purpose of the relationship be fulfilled.
... .
"This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions prompted by the supervening interest of society. We conclude, therefore, that ordinarily a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands." 181 A.2d at 349 (emphasis supplied).
And in Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973):
"It is thus that it must be concluded that a medical doctor is under a general duty not to make extra-judicial disclosures of information acquired in the course of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action. It is, of course, recognized that this duty is subject to exceptions prompted by the supervening interests of society, as well as the private interests of the patient himself." 287 So.2d at 829-30.
I am also persuaded by cases from jurisdictions in which although there exists a physician-patient privilege, the privilege is held to be waived when a patient's physical or mental condition is affirmatively placed in issue in pending litigation. Thus, in these jurisdictions once litigation has begun and the patient's mental or physical health is in issue, courts have been required to confront substantially the same question as that presented in this case, that is, whether because the privilege to prevent compelled disclosure has been waived, is noncompelled or extrajudicial disclosure authorized?
In Wenninger v. Muesing, 307 Minn. 405, 240 N.W.2d 333 (1976), the court addressed the single issue of whether unilateral private interviews of a patient's treating physician were to be prohibited, notwithstanding that the physician-patient privilege was waived when the patient placed her physical condition in controversy. Admittedly, the court's holding that the statutory privilege was waived only to the extent that discovery was allowed under rules of civil procedure which, obviously, contained no mention of private interviews, limits the application of the case. However, the rationale of that holding is particularly pertinent here:
"The policy underlying Rule 35.03 is the full disclosure of all relevant medical evidence concerning plaintiff's health when he voluntarily puts his health in issue by bringing a lawsuit. Rule 35.04 implements this policy by allowing the adverse party access to this evidence according to an orderly discovery procedure. The procedure defined in Rule 35.04 protects both the patient and his physician from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to the discovery of admissible evidence. In a formal deposition pursuant to Rule 35.04, the presence of a patient's counsel and the availability of protective orders under Rule 26.03 assure *268 that clearly irrelevant medical testimony will not be elicited. Private, nonadversary interviews of the doctor by adverse counsel would offer no such protection to the patient's right of privacy. The presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient which is essential to the successful treatment of the patient's condition.
"The presence of the patient's attorney during the doctor's examination also helps protect the doctor from unwittingly and improperly disclosing medical information about his patient. We note without deciding that a physician who discloses confidential information about his patient to another in a private interview may be subject to tort liability for breach of his patient's right to privacy or to professional discipline for unprofessional conduct. See, Note, 52 Col.L.Rev. 383; Note, 43 Minn.L.Rev. 943. Under the procedure set forth in Rule 35.04, the physician may rely upon the patient's counsel to keep the questioning, and hence his answers, relevant to the matters properly at issue in the lawsuit." 240 N.W.2d at 336-37 (footnote omitted).
See also Anker v. Brodnitz, 98 Misc.2d 148, 413 N.Y.S.2d 582 (1979).
I therefore think that the only conclusion that can be drawn from the fact that this state does not have a physician-patient privilege is that a physician can be compelled to testify, not that a physician is free to divulge his patient's confidences as he pleases. The majority opinion itself recognizes this, at least implicitly, when it says that physicians "have a fiduciary duty to not reveal a patient's confidence particularly, as here, when expressly instructed not to." That such a duty exists is further confirmed by our decision in Argonaut Insurance Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA), cert. denied, 364 So.2d 889 (Fla. 1978); see also Teperson v. Donato, 371 So.2d 703 (Fla. 3d DCA 1979); Fidelity and Casualty Co. v. Lopez, 375 So.2d at 59, prohibiting the disclosure of records of patients who were strangers to the litigation. Quite apart from the issue of the relevancy of such documents, the confidentiality of the documents played a substantial part in the decision. As this court said in Peralta:
"Lastly, we are confronted with the question of doctor/patient privilege as to persons not a party to the suit. Surely when one brings a medical malpractice suit, such as the instant case, one's medical history becomes the subject matter of the suit and he would waive any claim to privilege he might have under the law, if any. However, to permit a party to inject into the public record medical information of a stranger to the suit, under the guise that it has a bearing on the competency of the doctor, would be unconscionable. The question in medical malpractice is whether or not the doctor, in treating the plaintiff, used a standard of care commensurate with that used in the community and that question can be answered by utilizing other methods of proof than the invasion into medical records of strangers." 358 So.2d at 233.
Therefore, I think it inescapable that first, a physician has a duty not to reveal a patient's confidences; second, that duty remains in effect subject only to the supervening processes or orders of a court compelling disclosure of such confidences; third, a breach of that duty through uncompelled disclosure gives rise to a cause of action by the patient against the physician, Horne v. Patton, 287 So.2d at 824-32[7]; and fourth, that the petitioner's motion for a protective order, in effect, seeking an injunction *269 to prevent the threatened breach of that duty where the remedy at law is inadequate, was correctly granted in the first place and should not have been vacated.
I would grant certiorari and direct the trial court to reinstate the protective order.
JORGENSON and FERGUSON, JJ., concur in the dissent of DANIEL S. PEARSON, J.
NOTES
[1] We have certified this case to the Supreme Court as involving the following question of great public importance:

Does a court have the authority to prevent a treating physician from extrajudicially disclosing information obtained from his patient and information concerning the treatment of his patient where the patient has not consented to such disclosure?
[1] Neither briefed nor argued, but implicit in the court's decision, is the additional approval of lawyers inviting members of other professions to breach their ethical standards. That in itself may be a violation of the Florida Bar Code of Professional Responsibility Disciplinary Rules 1-102 and 7-102.
[2] Legislative expression of patient confidentiality may be found in section 455.241, Florida Statutes (1981) (regulating reports by physicians), section 395.202, Florida Statutes (1981) (regulating reports by hospitals), and section 627.736(6)(b), Florida Statutes (1981) (regulating reports by health care providers for certain insurance matters).
[3] As used herein, extrajudicial discussions concerning a patient are those which take place outside any formal proceedings, pretrial or trial, in the litigation and are not compelled by the law.
[4] Thus, the comment in footnote 2 of Frantz v. Golebiewski that there is no "Florida physician-patient ... privilege which would preclude such contact because of the witness's professional relationship with the plaintiff," id. at 284 n. 2, is entirely dictum. Moreover, the comment is, in my opinion, wrong. While it is true that Florida does not recognize a physician-patient testimonial privilege, extrajudicial disclosure by a physician is, as will be seen infra, precluded for other reasons.
[5] It has been noted that "[t]he probable explanation for ... the nonexistence of any comparable statutory privilege to protect patients against extrajudicial disclosures lies in the fact that, because of the high ethical standards of the medical profession, very few cases of extrajudicial disclosure arise, whereas physicians are frequently requested to testify in court." Note, Privileged Communications, 79 Harv.L. Rev. 1723, 1724 (1966). I think that the probable explanation for the nonexistence of Florida cases dealing with such extrajudicial disclosures is the same.
[6] Jurisdictions in which there is a physician-patient privilege have had little trouble in concluding that the patient has a cause of action against the physician for an unauthorized disclosure. See, e.g., Hammonds v. Aetna Casualty & Surety Co., 237 F. Supp. 96 (N.D.Ohio 1965); Geisberger v. Willuhn, 72 Ill. App.3d 435, 28 Ill.Dec. 586, 390 N.E.2d 945 (1979); Doe v. Roe, 93 Misc.2d 201, 400 N.Y.S.2d 668 (1977); Felis v. Greenberg, 51 Misc.2d 441, 273 N.Y.S.2d 288 (1966); Clark v. Geraci, 29 Misc.2d 791, 208 N.Y.S.2d 564 (1960); Berry v. Moench, 8 Utah 2d 191, 331 P.2d 814 (1958); Smith v. Driscoll, 94 Wash. 441, 162 P. 572 (1917). Contra, Mikel v. Abrams, 541 F. Supp. 591 (W.D. Mo. 1982); Arctic Motor Freight, Inc. v. Stover, 571 P.2d 1006 (Alaska 1977); Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249 (1965). See generally Annot., 20 A.L.R.2d 1109 (1968).
[7] Potential causes of action include breach of fiduciary duty, invasion of privacy, breach of express promise if one was made, and breach of implied promise. The theory of the latter action is the patient's belief, arising from the public's general knowledge of the medical profession's ethical standards, and widespread familiarity with the substance of the secrecy provisions of the Hippocratic Oath, that all physicians, at least impliedly, promise to maintain the confidences of the patient. See Note, Privileged Communications, supra.