JORGENSON, Judge,
dissenting.
Because I firmly believe that treating physicians are extraordinary witnesses in medical malpractice cases, I must respectfully dissent.
The policy implications of permitting treating physicians to meet and discuss ex parte a patient’s case with defense counsel, without notice and without the presence of *264 the plaintiff’s counsel, are too vast to allow unsupervised discovery by relying merely upon a strained construction of rules of civil procedure, see Frantz v. Golebiewski, 407 So.2d 283, 285 (Fla. 3d DCA 1981). I would therefore recede from Frantz or in the alternative limit that case to its facts and hold that there exists in physicians an explicit duty not to discuss a patient’s case with others.
As the majority recognizes, physicians have a fiduciary duty not to reveal a patient’s confidences. The majority’s decision authorizes a breach of that duty and, thus, necessarily sanctions trauma to the physician-patient relationship, the very harm the law ought to prevent.[1] This case does not concern the physician-patient testimonial privilege, a privilege which has never been recognized in Florida, see Morrison v. Malmquist, 62 So.2d 415 (Fla.1953). The significance of this case is the unique fiduciary and confidential relationship between physician and patient, a relationship which imposes a duty on the physician not to disclose to third parties confidential information concerning his patient when not compelled to by law, see Nardone v. Reynolds, 333 So.2d 25, 39 (Fla.1976); Morrison, 62 So.2d at 416.[2]
To the extent that we can we should nurture, not destroy, this legally recognized relationship. If Holly Coralluzzo is in fact a victim of medical malpractice, we should not add legal salt to the existing wound by approving, over Holly’s objection, her current treating physician’s ex parte meeting (for purposes patently not in furtherance of her treatment) with the very person who caused her injury. Such a meeting hardly enhances the physician-patient relationship. Indeed, in dealing with a similar case the Superior Court of Pennsylvania stated:
We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient’s antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezickson’s role in inducing Dr. Murtagh’s breach of his confidential relationship to his own patient is to be and is condemned.
Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 146 (Pa.Super.Ct.1962) (emphasis added). See also Hammonds v. Aetna Casualty & Surety Co., 243 F.Supp. 793 (N.D. Ohio 1965) (distinguishing testimonial privilege and holding that a patient’s protagonist may not engage in unsupervised conversations with the treating physician, that the mere waiver of a testimonial privilege does not release the doctor from his duty of secrecy and loyalty and that no one may be permitted to induce a breach of these duties); Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973) (holding that a medical doctor is under a general duty not to make extra-judicial disclosures of information acquired in the course of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action).
Louisell and Williams, in their medical malpractice manual, reach the heart of a second policy consideration:
[WJhere there is no clear statute or rule permitting otherwise, defense counsel should confer with non-party physicians *265 who treated plaintiff only with the knowledge and consent of the plaintiff and counsel. Not only is that the fair way, but it avoids any implication of collusion or conspiracy which may appear from clandestine consultations. To the same end, plaintiff’s counsel should cooperate in voluntarily facilitating this aspect of the defense attorney’s job.
1 D. Louisell & H. Williams, Medical Malpractice ¶ 12.05 (1982) (emphasis added); see also Fla.Bar Code Prof.Resp., Canon 9 (a lawyer should avoid even the appearance of professional impropriety); Wenninger v. Muesing, 307 Minn. 405, 240 N.W.2d 333 (1976) (private non-adversary interviews with patient’s attending physician are not contemplated under rules of discovery).
Recognizing the existence of a fiduciary dúty not to disclose patient confidences will do the defendant in this case no harm because the treating physician previously deposed can be deposed again upon a proper showing, see Fla.R.Civ.P. 1.280(b)(3), 1.310.
For the foregoing reasons I would grant certiorari in this case, and remand to the trial court with directions to enter a protective order.
DANIEL S. PEARSON and FERGUSON, JJ., concur in the dissent of JORGEN-SON, J.

. Neither briefed nor argued, but implicit in the court’s decision, is the additional approval of lawyers inviting members of other professions to breach their ethical standards. That in itself may be a violation of the Florida Bar Code of Professional Responsibility Disciplinary Rules 1-102 and 7-102.

. Legislative expression of patient confidentiality may be found in section 455.241, Florida Statutes (1981) (regulating reports by physicians), section 395.202, Florida Statutes (1981) (regulating reports by hospitals), and section 627.736(6)(b), Florida Statutes (1981) (regulating reports by health care providers for certain insurance matters).